05-6522-cv
United States v. $293,316

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2006

(Argued: April 18, 2007          Decided: August 10, 2007)

Docket No. 05-6522-cv

-------------------------------------------------------x

United States,

          Plaintiff-Appellee,

          -- v. --

Mohammad Khan, Akbar Khan, Muhammad Room, Montaz, Humayyum, John Patrick Donohue, as attorney for Khista Bacha, Amir Amaan, Dor Amaan, Bacha Khan, Ali Sher, Liaqat Ali, Sami Ur-Rahman, Said Ur Rahman, Gul Bacha, Bahroz Khan, Rahman Ali, Hanifa, Abdul Samad Khan, Aftab Ahmed, Sultan Zaib, Muhammad Ilyas Khan, Rashid Ahmed, Barakat Khwaja, Haroon Rasheed, Muzzafer Khan, Aftab Ud Din, Aziz Ur Rahman, also known as Azizullah, Imran Mateen, also known as Shakoor, Fazal Bacha, Rashid Iqbal, Muhammad Rahman, Nadar Shah, Muhammad Khan, Rahman Zaib, Ali Haider, Qadar Shab, Khalid Bacha, Amir Hamza, Abdul Kalam, also known as Humayyun, Arsala Khan, Muzaffar Khan, M. Khalid Farooqi, Muhammad Zahir, Ibn E. Amin, Muhammad Zaib, Shaffi Ullah, Ali Sher Khan, Bahadar Sher Khan, Ali Khan, Rafiq Ahmed, Alam Gir, Imran Matin, Samieur Rahman, M.A. Yeem, Mozafar Khan, Habib Ur Rehman, Sher Rahman, Badshah Amin, Rasheed Ahmed, Shams Ur Rahman, Muhammad Arifkhan, Noor Mohammad, Dil Aram Jan, Shafiullah, Mohammed Zeb, Ghulm Rahman, Fazal Rahman, Mohammad Room, Zahir Shah, Mohammad Amin, Sher Khan, Mohammad Shoeb, Qadar Shah, Iqbal Sayed,

          Claimants-Appellants,

$293,316 in United States Currency, More or Less, and all Proceeds Traceable Thereto Seized From Ali Sher Khan, $187,155 in United States Currency, More or Less, and all Proceeds Traceable thereto Seized from Akbar Ali Khan, $35,112 in United States Currency, More or Less, and all Proceeds Traceable thereto

Seized from Fazal Subhan,

                    Defendants,

Fazal Subhan, Haroon Khan, Mohammad Khan, Sami Ullah, Diaz Ali Shah, Amir Bahadur, Rohmai Khan, Khan Haroon, Sqbal Syed, Mian Rahim Shah, Fazal Rehman, Rehmat Ali, Ali Rehman Seth, Tajul Malook, Mohammad Ishaq, Malik Sardar, Iqbal Ahmed, Mohammad Khan,

                    Claimants.

-----------------------------------------------------x

B e f o r e :  WALKER, STRAUB and B.D. PARKER, Circuit Judges.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Jack B. Weinstein, Judge) denying Appellants' application for attorney's fees.

AFFIRMED.

DAVID B. SMITH, English & Smith (John P. Donohue, Kittredge, Donley, Elson, Fullem & Emblick, LLP, Philadelphia, PA, on the brief), Alexandria, VA, for Claimants-Appellants.

LAURA D. MANTELL, Assistant United States Attorney for the Eastern District of New York (Roslynn R. Mauskopf, United States Attorney, Steven Kim and Kathleen A. Nandan, Assistant United States Attorneys, on the brief), Brooklyn, NY, for Plaintiff-Appellee.

JOHN M. WALKER, JR., Circuit Judge:

The expression "you can take that to the bank" connotes the certainty and reliability of the banking system.  This long-

-2-

running dispute arises out of the disposition of several hundred thousand dollars that nearly eighty Pakistanis (the "contributor claimants")[1] wished to transfer from New York to Pakistan.  Their problems arose from their decision not to entrust their funds to the international banking system but rather to three couriers.  The couriers, who were also carrying some of their own money, were apprehended by the U.S. Customs Outbound Currency Team ("Customs") as they were about to board a flight to Pakistan and were subsequently convicted under the bulk cash smuggling provision of the USA PATRIOT Act.  See Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001, Pub. L. No. 107-56, 115 Stat. 272.  The United States District Court for the Eastern District of New York (Jack B. Weinstein, Judge) concluded that the government could forfeit 50% of the funds owned by the couriers (the "convicted claimants") without violating the Excessive Fines Clause of the Eighth Amendment.  United States v. $293,316 in U.S. Currency, 349 F. Supp. 2d 638 (E.D.N.Y. 2004).  As for the contributor claimants, it took them roughly three years to recover the money they had dispatched on what they had believed would be an overnight flight.

Two attorneys, John P. Donohue and David B. Smith, who

---

[1]   The convention in this case has been to refer to these individuals as "contributor claimants," a convention to which we adhere.  In reality, however, they are consignors.

represent many of the contributor claimants -- and, not incidentally, also two of the three convicted claimants -- sought attorney's fees from the United States.  The district court denied their request, and they now appeal from that decision.

**BACKGROUND**

In September 2002, the convicted claimants -- Ali Sher Khan, Akbar Ali Khan, and Fazan Subhan -- were arrested while on the jetway trying to board a flight from New York to Pakistan carrying $515,583.00 in U.S. currency, concealed, among other places, in soap and toothpaste boxes.  In December 2002, they were convicted of bulk cash smuggling, see 31 U.S.C. § 5332(a), as well as various offenses relating to their failure to report to government agents the amount of money they were transporting, see 31 U.S.C. § 5316(a)(1)(A), (b).

On or about February 10, 2003, the government filed a civil forfeiture action in rem against the funds seized from the convicted claimants.  Because this case turns, in part, on whether the government was dilatory in eventually returning money to the contributor claimants, we must recite the course of proceedings in some detail.

On or about March 11, 2003, Ali Sher Khan filed his answer to the complaint in rem as well as responses to the government's interrogatories.  Cf. Fed. R. Civ. P. C(6)(b) (Supplemental Rules for Certain Admiralty and Maritime Claims) ("Interrogatories may

be served with the complaint in an in rem action without leave of court. Answers to the interrogatories must be served with the answer to the complaint.") [hereinafter Supplemental Rules]. He did not submit a verified claim to the seized funds. In his papers, Ali Sher Khan mentioned the names of approximately forty-five of the eighty contributor claimants, which corroborated a list the government had seized from his person. Customs then sent copies of the verified complaint, as well as the government's interrogatories, to these forty-five putative claimants. Customs also sent the same documents to various other contributor claimants, identified in a letter dated July 9, 2003 from Attorney David Udell, who was representing Akbar Ali Khan and Fazal Subhan.[2] Thus, by mid-summer 2003, the government had notified nearly all of the contributor claimants that their money had been seized.

The contributor claimants, who had violated no law, understandably wanted their money back. Pursuant to Supplemental Rule C(6)(a)(i)(A), those asserting a right to seized funds must file verified claims promptly. See also Supplemental Rule C(6)(a)(iv); see generally United States v. Cambio Exacto, S.A.,

---

[2] While Donohue eventually undertook the representation of Akbar Ali Khan and those who had entrusted him with their funds (the "Akbar Ali Khan contributors"), David Udell apparently continues to represent Fazal Subhan and the Fazal Subhan contributors. The rest of their story is irrelevant to this appeal.

166 F.3d 522, 529 (2d Cir. 1999) (citing United States v. Amiel, 995 F.2d 367, 371 (2d Cir. 1993)).  This, unfortunately, they did not do, in part because some had gone to Pakistan and others did not quickly retain counsel.

The district court, however, has the authority to extend the time period for filing verified claims.  See Supplemental Rule C(6)(a)(i)(B).  And, both Judge Weinstein and Magistrate Judge Cheryl L. Pollack proved accommodating.  Still, by January 30, 2004, no claimant had filed a verified claim -- neither the convicted claimants nor a single one of the contributor claimants.[3]

Eventually, the three convicted claimants and those who had contributed money to one of them, Ali Sher Khan, filed verified claims.  On August 2, 2004, the government agreed to return money to forty-one of the forty-five contributors to Ali Sher Khan.  However, the aggregate amount claimed by the contributors to Ali Sher Khan exceeded by $28,000 the amount the government had seized from him and his belongings.[4]  Three of the four contributors whose claims remained in dispute at that point

---

[3]    In June 2003, the convicted claimants filed motions seeking leave to file their claims out of time.

[4]    It appears that Ali Sher Khan was responsible for some of this confusion, as he did not amend his claim downward -- making these four contributors' claims more plausible -- until October 19, 2004, on the eve of a hearing before Magistrate Judge Pollack.

eventually prevailed after a hearing before Magistrate Judge Pollack, although not until July 1, 2005.

With respect to those who had given their money to Akbar Ali Khan (the "Akbar Ali Khan contributors"), the process was slower. By August 2, 2004, a number of the Akbar Ali Khan contributors still had failed to respond to the government's interrogatories, and many had not filed verified claims.[5]  Some contributors to Akbar Ali Khan were still filing claims as late as May 2005.

As verified claims trickled in, the government pressed for the forfeiture of the full amount owned by the convicted claimants.  The convicted claimants argued that forfeiture in that amount was unconstitutional under the Excessive Fines Clause of the Eighth Amendment and in light of United States v. Bajakajian, 524 U.S. 321 (1998).  The district court agreed, concluding that "forfeiture of the entire amount of [convicted] claimants' currency would be grossly disproportionate to the gravity of claimants' offenses."  $293,316, 349 F. Supp. 2d at 640.  The district court ultimately ordered the forfeiture of half of the convicted claimants' own funds, amounting to "$33,500 for Ali Sher Khan, $9,650 for Akbar Ali Khan, and $5,000 for

---

[5]  Some of the Akbar Ali Khan contributors had filed claims on March 9, 2004; these claims, however, were unverified.  And, as one of the contributors already had filed a series of false claims for more than $60,000, the government "declined to recognize or attempt to settle any of the claims . . . that [were] not notarized or verified."

Fazal Subhan." Id. at 651.

In August 2005, the government began the process of issuing checks to both the contributor claimants and the convicted claimants. Thereupon, attorneys Donohue and Smith sought fees and expenses in the amount of $157,884.81, a little under a third of the total amount seized from the convicted claimants on the jetway. The district court denied their application, noting that although "[c]ounsel for all parties . . . acted ethically and properly . . . . [t]he Claimants' choice of a surreptitious method for sending their money . . . led to this costly litigation."

The district court concluded that attorneys Donohue and Smith could not, pursuant to the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 117 Stat. 202 ("CAFRA"), obtain fees for their work on behalf of the contributor claimants because there "were 'competing claims' [to the same property] within the meaning of section 2465(b)(2)(C)(ii)." Cf. 28 U.S.C. § 2465(b)(2). The district court also held that they could not obtain fees for their work on behalf of the convicted claimants because the government had been "substantially justified" in seeking forfeiture of the convicted claimants' money, or, in the alternative, because CAFRA preempted the Equal Access to Justice Act ("EAJA"), see 28 U.S.C. §§ 2412(b), (d)(1)(A), and because CAFRA does "not apply if the claimant is convicted of a crime for

-8-

which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law," 28 U.S.C. § 2465(b)(2)(B).  This appeal followed.

**ANALYSIS**

**I. The Civil Asset Forfeiture Reform Act**

In passing CAFRA, Congress was reacting to public outcry over the government's too-zealous pursuit of civil and criminal forfeiture.  Cf. United States v. Funds Held in the Name or for the Benefit of Wetterer, 210 F.3d 96, 110 (2d Cir. 2000) ("[W]e see aggressive but marginal claims asserted on dubious jurisdiction to seize charitable funds raised for the relief of abject orphans in an impoverished country, so that the money can be diverted for expenditure by the Department of Justice.").  As part and parcel of this effort to deter government overreaching, Congress provided for the payment of "reasonable attorney fees and other litigation costs" to claimants who "substantially prevail[]" in a "civil proceeding to forfeit property."  28 U.S.C. § 2465(b)(1)(A).  However, Congress had no wish to expand government liability respecting legitimate seizures of property plausibly subject to forfeiture; thus, CAFRA also provides that,

> [i]f there are multiple claims to the same property, the United States shall not be liable for costs and attorneys fees associated with any such claim if the United States--
> (i) promptly recognizes such claim;
> (ii) promptly returns the interest of the claimant in the property to the claimant, if the property can be divided without difficulty and there are no

-9-

competing claims to that portion of the property; (iii) does not cause the claimant to incur additional, reasonable costs or fees; and (iv) prevails in obtaining forfeiture with respect to one or more of the other claims.

28 U.S.C. § 2465(b)(2)(C). It was this "multiple claims exception" that the district court invoked to deny Donohue and Smith's request for attorney's fees for their work on behalf of the contributor claimants.[6]

Appellants argue (1) that the bulk cash seized from the convicted claimants is not the "same property" within the meaning of the multiple claims exception (because each dollar bill is a discrete parcel of property) and (2) even if it is, the government did not comply with the four predicates to the exception.[7] We disagree. Addressing Appellants' arguments

_____

[6] We need not spend much time on Appellants' argument that they are entitled, under CAFRA, to fees for their work on behalf of the convicted claimants. CAFRA simply does "not apply if the claimant is convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law." 28 U.S.C. § 2465(b)(2)(B); see United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars, More or Less, 429 F. Supp. 2d 577, 580-81 (E.D.N.Y. 2006). The convicted claimants were, in a word, convicted. The argument that 28 U.S.C. § 2465(b)(2)(B) applies only if the government pursues criminal forfeiture, defies common sense. The plain text of CAFRA bars fee awards if the property was subject to forfeiture under federal law, not just if the property was actually forfeited. Cf. Sullivan v. Stroop, 496 U.S. 478, 484 (1990).

[7] Were we required to reach the question, we would be inclined to agree with the district court that most, if not all, of the contributor claimants could not recover fees as "prevailing" parties. While we need not firmly decide the question, we think that the Supreme Court's decision in Buckhannon Board & Care

-10-

seriatim, claims need not be "competing," viz. mutually exclusive, as Appellants apparently believe, in order for the claims to relate "to the same property." Indeed, were we to read the statute as Appellants do, we would nullify the second clause of § 2465(b)(2)(C), which affords the government leeway to return property more slowly if there are "competing claims." Cf. South Carolina v. Catawba Indian Tribe, Inc., 476 U.S. 498, 510 n.22 (1986).

In addition, under Appellants' reading, the multiple claims exception could apply to currency only when the claims exceed the value of the seized money. We read the statute more broadly; we see situations involving several, mutually exclusive claims to the same currency as just one of the many situations covered by

Home, Inc. v. West Virginia Department of Health & Human Resources should inform our understanding of the term "substantially prevails" in CAFRA. In Buckhannon, the Court clarified that only "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." 532 U.S. 598, 604 (2001) (quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989)); see also Sole v. Wyner, 127 S. Ct. 2188, 2195-97 (2007) (holding that a party who obtained a preliminary injunction but subsequently saw her case dismissed on summary judgment did not attain "prevailing party" status required to obtain fees). Indeed, we are inclined to agree with the Ninth Circuit that the text of CAFRA suggests that Congress meant the fee-shifting provision to apply only in the event a claimant won in court. See Synagogue v. United States, 482 F.3d 1058, 1062 (9th Cir. 2007) (interpreting "'any civil proceeding to forfeit property' [to] refer [only] to a proceeding in court"); see also 28 U.S.C. § 2465(b)(2)(D) (providing for reduction in fees if the court "enters judgment in part for the claimant and in part for the Government") (emphasis added).

the multiple claims exception. That exception also applies where, as here, the "same property" is a pool of fungible currency that matches or exceeds the "multiple" but non-exclusive claims lodged against it.

Appellants' second argument is that the government has not satisfied the four prerequisites to the multiple claims exception. It is equally unavailing. Appellants cannot seriously contest two of the prerequisites. They concede, as they must, that the government has "prevail[ed] in obtaining forfeiture with respect to one or more of the other claims." 28 U.S.C. § 2465(b)(2)(C)(iv). It is also clear on this record -- despite Appellants' attack on the government's discovery practice -- that the government did not cause Appellants to incur additional fees. Cf. id. § 2465(b)(2)(C)(iii). As the district court noted, "[t]he government . . . [wa]s doing its job in trying to find out whether these are the people or in fact criminals taking money out illegally . . . and therefore . . . it [wa]s perfectly sound for the government to make inquiries." Appellants principally argue that the government neither promptly recognized their claims nor promptly returned their money. Cf. id. § 2465(b)(2)(C)(i), (ii).

The Supreme Court has discussed the meaning of "prompt[ness]" with respect to civil forfeiture. In United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850)

-12-

in United States Currency, the Court explained that "the Government and the claimant have an interest in a rule that allows the Government some time to investigate the situation in order to determine whether the facts entitle the Government to forfeiture so that, if not, the Government may return the money without formal proceedings." 461 U.S. 555, 565 (1983). In that case, the Court considered reasonable for the purposes of due process an eighteen-month delay between the seizure of property and the institution of forfeiture proceedings, in light of "the Government's diligent efforts in processing the petition for mitigation or remission and in pursuing related criminal proceedings." Id. at 569; see also United States v. Banco Cafetero Panama, 797 F.2d 1154, 1163 (2d Cir. 1986) (discussing $8,850). While this analysis does not control our interpretation of CAFRA, it does inform it.

The government acted more quickly in this case to recognize claims than it did in $8,850 in deciding whether to pursue forfeiture.[8] The government, and the district court, gave Appellants every opportunity to file verified claims to the seized currency, as they were required to do by the Supplemental Rules. Appellants did so only belatedly; moreover, since one

---

[8] With respect to the Ali Sher Khan contributors, for instance, verified claims were filed in January 2004 and the government recognized the vast majority of those claims in August 2004, a span of eight months.

-13-

contributor claimant filed false claims and one convicted claimant modified the amount he claimed downward on the eve of a hearing, the government's careful pace was certainly understandable.

Appellants also suggest that the government should have returned the claimed funds earlier; for instance, they argue that the government should have returned money to the forty-one contributor claimants the government recognized on August 4, 2004. But Appellants ignore that there were "competing claims to that portion of the property" that were resolved only a few months before the government had begun issuing checks. 28 U.S.C. § 2465(b)(2)(C)(ii). Indeed, had the government returned money to those forty-one contributor claimants, it might ultimately have lacked sufficient funds to pay the remaining four contributor claimants. As to the Ali Akbar Khan contributors, the government was still receiving documents in May 2005, again only a few months before it ultimately distributed the seized funds. All things considered, the government acted with reasonable dispatch under these complicated circumstances. Thus, we agree with the district court that Appellants are not entitled to attorney's fees for their work on behalf of the contributor claimants.

## II. The Equal Access to Justice Act

Attorneys Donohue and Smith also seek fees for their work on

behalf of the convicted claimants under the EAJA.  The EAJA provides for the recovery of attorney's fees under either the common law or "under the terms of a[] statute which specifically provides for such an award" provided that no other statute bars the fee award.  28 U.S.C. § 2412(b); see also id. § 2412(d)(1)(A) (permitting fees "[e]xcept as otherwise specifically provided by statute").

Courts have taken two basic approaches to the construction of § 2412.  Some circuits view that provision as a supplement to existing fee-shifting provisions.  See Gavette v. Office of Pers. Mgmt., 808 F.2d 1456, 1463-65 (Fed. Cir. 1986) (en banc); United States v. 329.73 Acres of Land, 704 F.2d 800, 803-10 (5th Cir. 1983) (en banc); United States v. 101.80 Acres of Land, 716 F.2d 714, 724 n.16, 726-27 (9th Cir. 1983).  Under this view, the EAJA is only preempted when it is in irreconcilable tension with another fee-shifting statute.  Other circuits, by contrast, have construed the EAJA to apply only in the absence of any other fee-shifting mechanisms.  See E.E.O.C. v. O & G Spring & Wire Forms Speciality Co., 38 F.3d 872, 882 (7th Cir. 1994); Natural Res. Def. Council, Inc. v. United States E.P.A., 703 F.2d 700, 704-06 (3d Cir. 1983); Envtl. Def. Fund, Inc. v. E.P.A., 716 F.2d 915, 919 (D.C. Cir. 1983) (per curiam).

We need not decide the question here, for the EAJA and CAFRA

-15-

are irreconcilably at odds.[9] Section 2465(b)(2)(A) expressly and unequivocally provides that "[t]he United States shall not be required to . . . make any other payments to the claimant <u>not specifically authorized by this subsection</u>."  (emphasis added). Thus, CAFRA is exclusive of all other remedies.  And, since Appellants are not entitled to fees under CAFRA for their work on behalf of the convicted claimants, <u>see</u> <u>supra</u> Part I, they cannot obtain through the backdoor of the EAJA what Congress has forbidden them to obtain through the front door of CAFRA.

We thus agree with the district court that Appellants are not entitled to attorney's fees for their work on behalf of the convicted claimants.

*    *    *    *    *

Whether or not each dollar carried by the convicted claimants could be traced to a different contributor claimant, we will not require the district court to engage in such metaphysical slicing-and-dicing.  <u>Cf.</u> <u>Frazier v. Cupp</u>, 394 U.S. 731, 740 (1969).  Rather, we recognize that complications often attend transactions involving scores of persons, across many

---

[9]    We note, however, that the latter view better accords with the text of the EAJA and with its legislative history. <u>See</u> H.R. Rep. No. 96-1418, at 18 (1980), <u>as reprinted in</u> 1980 U.S.C.C.A.N. 4984, 4997 (explaining that "this section is not intended to replace or supercede any existing fee-shifting statutes . . . or to alter the standards or the case law governing those Acts.  It is intended to apply only to cases (other than tort cases) where fee awards against the government are not already authorized").

miles, and involving several hundreds of thousands of dollars. Untangling the skein of ownership in cases like this one is a difficult and complicated task. Those complications will often mean that attorney's fees are properly withheld, even from innocent contributors. While we understand that many aliens use couriers to deliver money to friends and relatives because the couriers speak their language, charge no fees, and serve areas remote from the nearest Western Union branch, and while we are equally mindful that Donohue and Smith invested considerable time in helping the contributor claimants recover their money, under CAFRA those facts cannot justify the imposition of another burden on the public fisc.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.