10-300-cv
United States v. The Painting Known as “Le Marché”

 UNITED STATES COURT OF APPEALS
 FOR THE SECOND CIRCUIT

 August Term, 2010

 (Argued: February 2, 2011 Decided: June 3, 2011)

 Docket No. 10-300-cv

 UNITED STATES OF AMERICA,

 Plaintiff-Appellee,

 — v.—

 SHARYL R. DAVIS,

 Claimant-Appellant,

 THE PAINTING KNOWN AS “LE MARCHÉ,” created by Camille Pissarro, located at
 Sotheby’s, 1334 York Avenue, New York, NY,

 Defendant-in-Rem.*

B e f o r e:

 CALABRESI and LYNCH, Circuit Judges, and COTE, District Judge.**

 __________________

 *
 The Clerk of Court is respectfully instructed to amend the official caption in this case
to conform to the listing of the parties above.
 **
 The Honorable Denise Cote, United States District Judge for the Southern District
of New York, sitting by designation.
 This appeal arises out of a successful forfeiture action brought by the United States

government pursuant to 19 U.S.C. § 1595a. The district court (Richard J. Sullivan,

Judge) issued a final judgment of forfeiture in favor of the government after a one-week

jury trial and denied claimant-appellant Sharyl R. Davis’s subsequent motion for

attorney’s fees. On appeal, Davis principally argues that the district court erred by

refusing to apply the protections afforded by 18 U.S.C. § 983 to the government’s Section

1595a claim and by denying her motion for attorney’s fees after two of the government’s

three forfeiture claims were dismissed at summary judgment. We hold that forfeiture

actions brought pursuant to 19 U.S.C. § 1595a are not governed by 18 U.S.C. § 983, and

therefore Davis was not entitled to raise the innocent-owner defense provided by Section

983(d) or to take advantage of the heightened proof requirement of Section 983(c). We

therefore AFFIRM the district court’s judgment of forfeiture entered on January 19, 2010.

Furthermore, since Davis was not a prevailing party within the meaning of 28 U.S.C.

§ 2465(b)(1), she was not entitled to attorney’s fees under that statute. We therefore

AFFIRM the district court’s order of May 25, 2010.

 BARBARA HOFFMAN, The Hoffman Law Firm, New York, New York, for
 Claimant-Appellant.

 JEFFREY ALBERTS, Assistant United States Attorney (Virginia Chavez
 Romano, Assistant United States Attorney, on the brief), for Preet
 Bharara, United States Attorney for the Southern District of New York,
 New York, New York, for Plaintiff-Appellee.

 2
GERARD E. LYNCH, Circuit Judge:

 This case involves two parties, both asserting legitimate claims to the same

indivisible piece of property. In 1985, claimant-appellant Sharyl R. Davis purchased the

Camille Pissarro monotype Le Marché for its fair market value, unaware that it had

recently been stolen from a French museum. More than twenty years later, Le Marché’s

true provenance came to light, and the United States government brought this forfeiture

action with the intent of returning the monotype to France. Unlike in the Judgment of

Solomon, see 1 Kings 3:16-28, neither party has blinked, and we are therefore in the

unenviable position of determining who gets the artwork, and who will be left with

nothing despite a plausible claim of being unfairly required to bear the loss. In making

that determination, we take comfort in our obligation to follow the rules that Congress has

given, and recognize that justice is done by providing the predictable result that Congress

intended. Doing so here requires that we affirm both the district court’s (Sullivan, J.)

final judgment of forfeiture entered on January 19, 2010, and its order of May 25, 2010,

denying Davis’s motion for attorney’s fees.

 BACKGROUND

I. Factual Background

 Two works of art were stolen from the Musée Faure in Aix-les-Bains, France on

November 16, 1981. One of them, the Pissarro monotype Le Marché, made its way to

San Antonio, Texas, where Emil Guelton consigned it to J. Adelman Antiques and Art

Gallery. On May 1, 1985, the gallery’s proprietor, Jay Adelman, sold the monotype for

 3
$8,500 to the Sharan Corporation, a now-defunct entity once partially controlled by

Davis.

 Following the Sharan Corporation’s 1992 dissolution, Davis took ownership of Le

Marché, which she displayed in her home for more than ten years before consigning it to

Sotheby’s for sale at an upcoming auction. The French National Police became aware of

Le Marché’s impending sale and informed United States law enforcement officials that

the Pissarro monotype soon to be auctioned off by Sotheby’s had been stolen from the

Musée Faure twenty-two years earlier. The United States Department of Homeland

Security requested that Sotheby’s withdraw Le Marché from the auction, and Sotheby’s

complied.

 Around the same time, the French authorities reopened their investigation into the

theft in hopes of uncovering sufficient evidence to secure Le Marché’s return. As part of

those efforts, investigators interviewed Guelton, who admitted selling artwork to

Adelman while visiting Texas in the 1980s. Investigators also included Guelton’s picture

in a photo array that they showed to Jacqueline Rivollet, the museum guard on duty the

day of the theft. Rivollet positively identified Guelton as the thief. Armed with this

evidence, the United States government filed a verified complaint in the Southern District

of New York on November 6, 2006, seeking civil forfeiture of the monotype.

II. District Court Proceedings

 The government’s complaint alleged three separate claims for forfeiture. First, the

government’s “customs claim” sought forfeiture under 19 U.S.C. § 1595a, a customs

 4
statute enacted as part of the Tariff Act of 1930. Section 1595a authorizes the forfeiture

of “[m]erchandise which is introduced . . . into the United States contrary to law . . . if

[the merchandise] . . . is stolen, smuggled, or clandestinely imported or introduced.” 19

U.S.C. § 1595a(c)(1)(A). To satisfy the statute’s “contrary to law” requirement, the

government alleged a violation of the National Stolen Property Act (“NSPA”), which

criminalizes, among other things, the possession or sale of stolen goods valued at $5,000

or more that have moved in interstate or international commerce, with knowledge that the

goods were stolen. See 18 U.S.C. §§ 2314, 2315. To satisfy the “is stolen, smuggled, or

clandestinely imported or introduced” requirement, the government alleged that Guelton

took Le Marché from the Musée Faure.

 The government based its second and third forfeiture claims on 18 U.S.C. § 981,

under which property constituting or “derived from proceeds traceable to a violation of

. . . any offense constituting ‘specified unlawful activity’” is forfeitable to the United

States. 18 U.S.C. § 981(a)(1)(C). Because NSPA violations are “specified unlawful

activity,” see 18 U.S.C. §§ 1956(c)(7)(A), 1961(1), the government asserted the same

factual predicate to support its forfeiture claims under Section 981 as it did to support its

customs claim, namely that Le Marché constituted the proceeds of Guelton’s theft.

 Following discovery, the government moved for summary judgment on its customs

claim. Davis responded by filing a cross-motion for summary judgment on all three of

the government’s forfeiture claims in which she asserted that her status as an “innocent

owner” of Le Marché entitled her to continued possession of the monotype. In support of

 5
that proposition, Davis directed the district court to 18 U.S.C. § 983(d), which provides

that “[a]n innocent owner’s interest in property shall not be forfeited under any civil

forfeiture statute.”

 At a hearing on June 17, 2009, the district court ruled on several issues relevant to

the government’s customs claim. First, it found that forfeiture actions brought pursuant to

19 U.S.C. § 1595a are not subject to an innocent-owner defense. Second, it concluded

that the burden-shifting approach found in 19 U.S.C. § 16151 applied, and therefore the

initial burden rested on the government to demonstrate probable cause to believe that Le

Marché was subject to forfeiture. Third, the district court found – based on Rivollet’s

eyewitness identification of Guelton and the undisputed fact that Guelton had sold the

monotype to Adelman while in Texas – that the government had made a showing of

probable cause for forfeiture. The burden therefore shifted to Davis to establish by a

preponderance of the evidence that the monotype was not stolen merchandise introduced

into the United States contrary to law. See 19 U.S.C. §§ 1595a(c), 1615.

 As for the government’s forfeiture claims under 18 U.S.C. § 981, the district court

found that Davis had established that she was an innocent owner of the monotype within

 1
 19 U.S.C. § 1615 provides:
 In all suits or actions . . . brought for the forfeiture of any vessel,
 vehicle, aircraft, merchandise, or baggage seized under the
 provisions of any law relating to the collection of duties on
 imports or tonnage, where the property is claimed by any
 person, the burden of proof shall lie upon such
 claimant . . . Provided, That probable cause shall be first shown
 for the institution of such suit or action, to be judged of by the
 court . . . .

 6
the meaning of 18 U.S.C. § 981(d)(3)(A), and was therefore entitled to summary

judgment on those claims. The government has not appealed that ruling.

 In January 2010, the district court held a jury trial to resolve the two remaining

disputed issues of material fact: whether Davis could demonstrate by a preponderance of

the evidence that Le Marché “(1) was not transported in interstate or foreign commerce;

(2) with knowledge that the property was stolen.”2 At trial, Davis called Rivollet to the

stand. She testified to being a mere “meter and a half” from Guelton on the day of the

theft and to looking him in the eyes as he entered the museum. On cross examination,

Rivollet explained that she later heard Guelton running down the stairs, and then saw him

emerge from the stairwell “with something under [his] parka.” After calling the police,

Rivollet inventoried the museum’s collection and discovered that Le Marché had been

removed from its spot on the wall. Additional evidence demonstrated that Guelton later

transported Le Marché into the United States and consigned it to Adelman.

 Jury deliberations began the morning of January 11, 2010. Later that day, the jury

returned a unanimous verdict for the government. Specifically, the jury found that Davis

had failed to prove (1) that Le Marché was “not the work of art stolen from the Faure

Museum” on November 16, 1981, (2) that Le Marché “was not transported, transmitted or

transferred in interstate or foreign commerce” by Guelton, or (3) that “Guelton did not

 2
 The district court had previously concluded that there was no dispute regarding the
value of Le Marché at the time of its introduction into the United States, and it therefore
granted summary judgment to the government on that element of its customs claim.

 7
receive, possess, conceal, store, barter, sell, or dispose of [Le Marché], knowing it was

stolen, after [Le Marché] crossed a United States or state border.” On January 19, 2010,

the district court entered a final judgment of forfeiture, and on May 25, 2010, it denied

Davis’s motion for attorney’s fees. This appeal followed.

 DISCUSSION

 On appeal, Davis brings a host of challenges to the proceedings below. We begin

by addressing Davis’s argument that the government failed to demonstrate probable cause

to believe that Le Marché was subject to forfeiture under 19 U.S.C. § 1595a. Next, we

turn to Davis’s argument that she was entitled to additional substantive and procedural

protections that the district court found inapplicable to forfeiture actions brought pursuant

to 19 U.S.C. § 1595a. We then resolve Davis’s constitutional challenges, before finally

addressing the issue of attorney’s fees.

I. 19 U.S.C. § 1595a and the National Stolen Property Act

 Section 1595a authorizes the forfeiture of merchandise “introduced into the United

States contrary to law,” if that property “is stolen, smuggled, or clandestinely imported or

introduced.” 19 U.S.C. § 1595a(c)(1)(A). To satisfy the statute’s “contrary to law”

requirement, the government alleged that Guelton violated the NSPA by stealing Le

Marché from the Musée Faure, transporting it into the United States, and then consigning

it to Adelman. See 18 U.S.C. §§ 2314, 2315. Davis submits that the district court

committed three errors in its application of the NSPA to this case. First, Davis argues that

“contrary to law” refers only to violations of the customs laws, not to violations of the

 8
NSPA. Davis also argues that the district court erred in granting summary judgment to

the government on whether Le Marché’s value met the NSPA’s statutory minimum of

$5,000. Finally, Davis argues that Le Marché is no longer “stolen” property within the

meaning of Section 1595a(c), and is therefore not subject to forfeiture. We address those

arguments in turn.

 A. The Meaning of “Contrary to Law”

 Property is subject to forfeiture under 19 U.S.C. § 1595a(c) only if it is introduced

into the United States “contrary to law.” Davis argues that NSPA violations “cannot

serve as a predicate offense to effect seizure under § 1595a(c)’s ‘contrary to law’

[requirement] without a customs violation.” In effect, she urges us to read the phrase

“contrary to law” as “contrary to customs law.”

 “It is axiomatic that the plain meaning of a statute controls its interpretation.” Lee

v. Bankers Trust Co., 166 F.3d 540, 544 (2d Cir. 1999). The phrase “contrary to law”

means “illegal; unlawful; conflicting with established law.” See Black’s Law Dictionary

377 (9th ed. 2009). Nothing in the text of Section 1595a limits that broad definition, and

nowhere does the statute narrowly define the word “law.”

 The government argues, with some force, for a literal interpretation of the statute.

If Congress had intended to limit the scope of Section 1595a to violations of the customs

laws, it could have said so. Since it did not, Section 1595a(c) would appear to require

only that the property in question be introduced into the United States illegally,

unlawfully, or in a manner conflicting with established law.

 9
 The rest of the statute provides additional support for this interpretation. For

example, Section 1595a(c)(2)(C) permits the forfeiture of “merchandise or packaging in

which copyright . . . violations are involved,” see 17 U.S.C. § 506, while Section

1595a(c)(2)(D) permits the forfeiture of “trade dress merchandise involved in the

violation of a court order [pursuant to 15 U.S.C. § 1125].” That Section 1595a

incorporates by reference federal laws that do not directly pertain to customs enforcement

counsels against a reading of “contrary to law” that might preclude its application to those

very statutes. Accordingly, there is a strong argument that the phrase “contrary to law” in

Section 1595a(c) means exactly what it says: the government may seize and forfeit

merchandise that is introduced into the United States illegally, unlawfully, or in a manner

conflicting with established law, regardless of whether the law violated relates to customs

enforcement.

 On the other hand, a statute’s context is critical to its interpretation and Section

1595a’s reference to the importation of goods is relevant to discerning what Congress

intended by the phrase “contrary to law.” 19 U.S.C. § 1595a(c). In light of this context,

it can be argued that some nexus between international commerce – the subject of the

customs regulations found in Title 19 – and the law violated is necessary to trigger

Section 1595a’s remedies.

 We need not resolve that issue in this case because, even if such a nexus is

required, the NSPA provides one. It requires the “transport[ation], transmi[ssion], or

transfer[] in interstate or foreign commerce” of stolen property or the dealing in stolen

 10
property that has “crossed a State or United States boundary.” 18 U.S.C. §§ 2314, 2315.

Whatever the merit of the government’s argument that the violation of any law suffices to

meet Section 1595a’s requirement that an object’s introduction be “contrary to law,”

violation of the NSPA certainly does suffice, and as that is the only law the government

has alleged as a basis for its invocation of Section 1595a, that is the only question we

need answer here.

 B. The Value of Le Marché

 Davis submits that, even if NSPA violations satisfy the “contrary to law”

requirement of Section 1595a, the district court improperly granted summary judgment

for the government on whether Le Marché’s value at the time it entered the United States

met the $5,000 threshold necessary for an NSPA violation. We review de novo the

district court’s grant of summary judgment, applying the same standard as the district

court to determine whether “a genuine issue of a material fact exists that would preclude

judgment as a matter of law.” Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219,

1224 (2d Cir. 1994). Here, Davis’s evidence failed to raise a material issue of fact

regarding Le Marché’s value, and so the district court properly granted summary

judgment to the government.

 At summary judgment, the undisputed evidence before the district court indicated

that Le Marché was stolen on November 16, 1981, and that Adelman sold it to the Sharan

Corporation for $8,500 on May 1, 1985. That soon after its importation Le Marché sold

for a price seventy percent above the statutory minimum is strong evidence that it was

 11
valued at or above $5,000 at the time Guelton brought it into the United States.

Therefore, in order to avoid summary judgment on this issue, Davis needed to come

forward with some evidence tending to show that Le Marché was worth less than $5,000

at the time of importation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250

(1986) (genuine issues of material fact exist if “a reasonable [factfinder] could return a

verdict for the nonmoving party”). This she failed to do.

 Davis’s Local Rule 56.1 statement cites five pieces of evidence that she argues

raise a genuine issue of material fact regarding Le Marché’s value. The first is a

declaration by expert appraiser Alex Rosenberg – evidently directed to whether Davis is

an innocent owner – stating that “$8,500 was not an unreasonably low price for the

Monotype,” and that a sale price within that range should not “trigger a suspicion that the

work of art was stolen.” This statement is hardly evidence that Le Marché was worth less

than $8,500; the only reasonable inference that can be drawn from it is that the price

Sharan Corporation paid for the monotype in 1985 approximated its fair market value, or,

if anything, was too low (albeit not “unreasonably low”). The second is a declaration

from art expert Gilbert Edelson explaining that “several hundreds of thousands of prints

are sold annually in the [United] States. Although a very small number of important,

well-known rarer prints by artists such as Rembrandt will sell for substantial prices, the

overwhelming number of prints sell for less than $5,000.” However, Edelson’s

declaration is wholly silent on the value of Le Marché, and does not indicate whether or

not it falls into the category of “well-known rarer prints” that command a premium price.

 12
It therefore does nothing to undermine the government’s evidence that Le Marché was

worth more than $5,000 during the relevant period. Similarly, not one of the depositions

that Davis cites – from the curator of the Musée Faure, from a federal agent who

investigated this case, and from Adelman – sheds any light on Le Marché’s value.

 A jury presented with both the uncontradicted evidence that Le Marché was worth

$8,500 in 1985 and the equivocal and irrelevant statements cited by Davis could not

reasonably conclude that the monotype was worth less than $5,000 when it entered the

United States. We therefore affirm the district court’s finding that the government was

entitled to summary judgment on that element of its forfeiture claim.

 C. The Meaning of “Is Stolen”

 Property “shall be seized and forfeited” pursuant to 19 U.S.C. § 1595a(c)(1)(A) if

it “is stolen, smuggled, or clandestinely imported or introduced” into the United States.

Davis submits that the word “is” requires us to assess whether Le Marché constituted

stolen property at the time of forfeiture, rather than at the time it entered the United

States.3 That argument, which calls for an interpretation of the statute that conflicts with

the most natural reading of the text, is without merit.

 The text of the statute makes clear that “is stolen” refers to the status of the

property at the time of its introduction into the United States. The relevant portion of

 3
 Davis then proceeds to contend that she had acquired title to the work under Texas
law by the time of forfeiture, such that it could no longer be considered “stolen.” Because
we find that the phrase “is stolen” refers to the property’s status at the time of introduction,
we need not address that argument.

 13
Section 1595a(c) states:

 Merchandise which is introduced or attempted to be
 introduced into the United States contrary to law shall be
 treated as follows:
 (1) The merchandise shall be seized and forfeited if it –
 (A) is stolen, smuggled, or clandestinely imported or
 introduced; . . .
 (D) is a plastic explosive, as defined in section 841(q) of Title
 18, which does not contain a detection agent, as defined in
 section 841(p) of such title. . . .

Subsection (c) applies only to “[m]erchandise which is introduced or attempted to be

introduced into the United States,” and it therefore unquestionably focuses on the manner

in which the merchandise enters the United States. Under the most natural reading of the

text, the phrase “is stolen,” which modifies the same merchandise, also refers to the

merchandise’s status at the time of introduction. That focus makes sense: Section 1595a

is a customs statute regulating the flow of goods into and out of the country. It is

therefore concerned with what types of goods enter the United States, not with what

happens to them after they get here.

 Davis’s interpretation shifts the statute’s focus away from the border in a manner

that would produce absurd results. There is no reason to believe that the word “is” in

Section 1595a(c)(1)(A) refers to a different time period than the word “is” in Section

1595a(c)(1)(D), which requires the forfeiture of merchandise that “is a plastic explosive,

. . . which does not contain a detection agent.” See Mashantucket Pequot Tribe v.

Connecticut, 913 F.2d 1024, 1030 (2d Cir. 1990) (noting that “the same word or phrase”

should be “construed to have the same meaning” throughout a statute). However,

 14
interpreting “is” to refer to the time of forfeiture, rather than the time of importation,

would mean that the forfeiture of plastic explosives under Section 1595a(c)(1)(D) could

be thwarted if after importation a detection agent were added to the mixture. There is

nothing to suggest that Congress intended to create such a loophole when enacting this

legislation.

 Accordingly, we reject Davis’s reading of “is stolen,” and adopt instead the more

natural reading of the text that gives full force to each word that Congress employed: the

phrase “is stolen” in 19 U.S.C. § 1595a(c) refers to the status of the property at the time

of its introduction into the United States.

II. The Effect of the Civil Asset Forfeiture Reform Act of 2000 on 19 U.S.C. § 1595a

 Civil in rem forfeiture proceedings are based in part on the “legal fiction” that “[i]t

is the property which is proceeded against, and . . . held guilty and condemned as though

it were conscious instead of inanimate and insentient.” Various Items of Personal

Property v. United States, 282 U.S. 577, 581 (1931). As a result, civil forfeiture

claimants are rarely afforded the same procedural and substantive protections applicable

in criminal forfeiture proceedings. For example, in many cases the burden rests on the

claimant to demonstrate that her property is not subject to forfeiture. See United States v.

Parcel of Property, 337 F.3d 225, 229-30 (2d Cir. 2003). Similarly, the claimant’s

culpability is often irrelevant: “a long and unbroken line of cases holds that an owner’s

interest in property may be forfeited by reason of the use to which the property is put

even though the owner did not know that it was put to such use.” Bennis v. Michigan,

 15
516 U.S. 442, 446 (1996); see also United States v. Ursery, 518 U.S. 267, 291-92 (1996).

 Congress responded to concerns regarding the broad scope of the government’s

civil forfeiture authority by passing the Civil Asset Forfeiture Reform Act of 2000

(“CAFRA”), Pub. L. No. 106-185, 114 Stat. 202. CAFRA provides some claimants with,

among other things, a more favorable burden of proof and an innocent-owner defense.

See 18 U.S.C. §§ 983(c) & (d). Davis challenges the district court’s finding that those

protections are inapplicable to forfeiture actions brought pursuant to 19 U.S.C. § 1595a.

We review this question of statutory interpretation de novo. L-3 Commc’ns Corp. v. OSI

Sys., Inc., 607 F.3d 24, 27 (2d Cir. 2010).

 A. Innocent-Owner Defense

 Davis submits that forfeiture actions brought pursuant to Section 1595a are subject

to an innocent-owner defense. Although that argument has some equitable appeal, it

lacks legal merit: 19 U.S.C. § 1595a does not provide for an innocent-owner defense, and

CAFRA expressly excludes forfeiture actions brought under Title 19 from its innocent-

owner provision.

 We turn first to the text of 19 U.S.C. § 1595a. Although “numerous statutes

contain an explicit innocent owner defense,” United States v. An Antique Platter of Gold,

184 F.3d 131, 138 (2d Cir. 1999), Section 1595a plainly does not, nor did Congress

provide for one’s incorporation by reference to other provisions of the Code. Instead,

Section 1595a commands that property “which is introduced or attempted to be

introduced into the United States contrary to law . . . shall be seized and forfeited.” 19

 16
U.S.C. § 1595a(c)(1) (emphasis added). The word “shall” indicates that Congress

intended forfeiture under Section 1595a(c)(2) to happen as a matter of course. Such

definite language is not susceptible to an interpretation that a legitimate possessory

interest in the property might defeat an otherwise valid forfeiture claim.

 It is unsurprising that Section 1595a – a statute first enacted more than eighty years

ago as part of the Tariff Act of 1930, Pub. L. No. 71-361, 46 Stat. 590 – would require

forfeiture of property regardless of the owner’s culpability. “[E]arly statutes used to

enforce the customs laws . . . generally . . . contained no innocent owner defense.” United

States v. 92 Buena Vista Ave., 507 U.S. 111, 122 (1993); see also United States v.

Bajakajian, 524 U.S. 321, 330 (1998) (“Historically, . . . the owner of forfeited property

could be entirely innocent of any crime.”). Indeed, the Supreme Court held, in a case

addressing another provision of the Tariff Act of 1930, that “forfeiture may be enforced

even against innocent owners . . . . The penalty is at times a hard one, but it is imposed

by the statute in terms too clear to be misread.” General Motors Acceptance Corp. v.

United States, 286 U.S. 49, 57 (1932). Coming so shortly after the statute’s adoption, the

Supreme Court’s decision in that case casts particularly vivid light on the then-prevailing

understanding of the Tariff Act’s forfeiture provisions, and thus on Congress’s likely

intent.

 Nothing that Congress has done in the subsequent eighty years commands a

different result today. See United States v. An Antique Platter of Gold, 991 F. Supp. 222,

232 (S.D.N.Y. 1997) (“Section 1595a(c) does not provide for an innocent owner

 17
defense.”), aff’d, 184 F.3d 131 (2d Cir. 1999). In fact, subsequent amendments to

Section 1595a have introduced no reference to an innocent-owner defense. See, e.g.,

USA Patriot Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, 120

Stat. 192, 242; Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, § 3123, 100 Stat. 3207,

3207-87.4 Given Congress’s recent attention to civil forfeiture, “there is no reason to

believe that the omission . . . was anything but deliberate.” Platter of Gold, 184 F.3d at

138-39.

 Nevertheless, Davis suggests that we graft onto 19 U.S.C. § 1595a the innocent-

owner defense that Congress enacted as part of CAFRA.5 That provision applies to “any

civil forfeiture statute,” 18 U.S.C. § 983(d)(1), which CAFRA initially defines to include

“any provision of Federal law providing for the forfeiture of property other than as a

sentence imposed upon conviction of a criminal offense,” id. § 983(i)(1). However, in

 4
 Notably, these cited amendments bracket Congress’s extension of the innocent-
owner defense to other statutes in 2000.
 5
 18 U.S.C. § 983(d) reads in part:
 (1) An innocent owner’s interest in property shall not be
 forfeited under any civil forfeiture statute. The claimant shall
 have the burden of proving that the claimant is an innocent
 owner by a preponderance of the evidence.
 (2)(A) With respect to a property interest in existence at the time
 the illegal conduct giving rise to forfeiture took place, the term
 “innocent owner” means an owner who –
 (i) did not know of the conduct giving rise to forfeiture; or
 (ii) upon learning of the conduct giving rise to the forfeiture, did
 all that reasonably could be expected under the circumstances to
 terminate such use of the property.

 18
what has become known as the “customs carve-out,” 18 U.S.C. § 983(i)(2)(A) excludes

from that definition “the Tariff Act of 1930 or any other provision of law codified in title

19.” That language could not be more clear: for purposes of CAFRA, the Tariff Act of

1930 and the statutory provisions contained in Title 19 – including 19 U.S.C. § 1595a –

are not “civil forfeiture statutes.” Because CAFRA’s innocent-owner provision applies

only to forfeiture actions brought “under any civil forfeiture statute,” and because Section

1595a is not a “civil forfeiture statute” as defined in CAFRA, forfeiture actions brought

pursuant to 19 U.S.C. § 1595a are not subject to CAFRA’s innocent-owner provision.6

 Undeterred, Davis points to a number of statements in the congressional record

that may indicate that some members of Congress had hoped for a more comprehensive

piece of legislation. Based on those comments, Davis argues that “Congress intended

[CAFRA’s] innocent owner defense to apply to all federal forfeiture statutes,” and urges

us to carry out that intent by effectively eliminating the customs carve-out. However, as

Davis herself admits, CAFRA’s backers ultimately decided to exclude Title 19 from the

scope of CAFRA’s reforms in order to prevent the bill from being “bottled up in the

unsympathetic House Ways and Means Committee, which has jurisdiction over bills

affecting Customs.” David B. Smith, An Insider’s View of the Civil Asset Forfeiture

 6
 Accord United States v. Painting Known as “Hannibal”, No. 08 Civ. 1511, 2010 WL
2102484, at *4 (S.D.N.Y. May 18, 2010); United States v. Approximately 1,170 Carats of
Rough Diamonds, No. 05-CV-5816, 2008 WL 2884387, at *9 (E.D.N.Y. July 23, 2008);
United States v. One Lucite Ball Containing Lunar Material, 252 F. Supp. 2d 1367, 1378
(S.D. Fla. 2003).

 19
Reform Act of 2000, Champion, June 2000, at 29 n.10. Although Davis characterizes

that decision as a reflection of “the arbitrary division of authority between committees in

the House[,] not a judgment that there is something special about the forfeiture statutes in

Title[] 19,” we must apply the law that Congress actually passed and that the President

signed, not the one that some members of Congress may have preferred. That proponents

of a broader law sacrificed their objective in order to secure faster or more certain passage

does not undermine, but rather confirms, the status of the final text as the law that

represents the enacted wishes of the legislators. Ignoring the customs carve-out would

violate our obligation to follow the law rather than make it.

 Davis also submits that, because CAFRA’s innocent owner provision applies to

claims brought under “any civil forfeiture statute,” 18 U.S.C. § 983(d)(1) (emphasis

added), rather than “a civil forfeiture statute,” e.g., id. § 983(a)(1)(A)(i) (emphasis

added), it must apply to all statutes authorizing civil forfeiture regardless of how “civil

forfeiture statute” is defined in Section 983(i). However, under that interpretation, the

phrase “civil forfeiture statute” would mean one thing in Section 983(d), and another

elsewhere in the same Section. Such an interpretation is disfavored. See Clark v.

Martinez, 543 U.S. 371, 378 (2005). Moreover, when Congress did intend its reform

measures to stretch beyond the reach of 18 U.S.C. § 983(i), it used language manifesting

that intent, carefully avoiding the “civil forfeiture statute” phrase that it had specifically

defined as a term of art with a meaning narrower than its more natural purport. For

example, CAFRA’s fee-shifting provision applies to “any civil proceeding to forfeit

 20
property under any provision of Federal law.” 28 U.S.C. § 2465(b)(1). Congress’s

decision not to use the same broad language in providing for an innocent-owner defense

as it did in defining the scope of CAFRA’s fee-shifting provision further supports our

conclusion that Congress limited the application of that defense to “civil forfeiture

statutes” as that term is defined in Section 983(i).

 The statutory language is unambiguous: 19 U.S.C. § 1595(c) does not contain an

innocent-owner defense, and the customs carve-out excludes the government’s customs

claim from the scope of 18 U.S.C. § 983(d). We therefore hold that no innocent-owner

defense applies to forfeiture claims brought pursuant to 19 U.S.C. § 1595a.

 B. Burden of Proof

 Davis argues that the district court erred in applying the burden-of-proof approach

found in 19 U.S.C. § 1615, rather than the more claimant-friendly approach laid out in 18

U.S.C. § 983(c).7 We disagree.

 7
 18 U.S.C. § 983(c) provides:
 In a suit or action brought under any civil forfeiture statute for
 the civil forfeiture of any property –
 (1) the burden of proof is on the Government to establish, by a
 preponderance of the evidence, that the property is subject to
 forfeiture;
 (2) the Government may use evidence gathered after the filing
 of a complaint for forfeiture to establish, by a preponderance of
 the evidence, that property is subject to forfeiture; and
 (3) if the Government’s theory of forfeiture is that the property
 was used to commit or facilitate the commission of a criminal
 offense, or was involved in the commission of a criminal
 offense, the Government shall establish that there was a
 substantial connection between the property and the offense.

 21
 There can be no doubt that, prior to CAFRA, the burden-of-proof provision in 19

U.S.C. § 1615 governed forfeiture actions brought pursuant to 19 U.S.C. § 1595a.8 That

result was required by 19 U.S.C. § 1600, which states that “[t]he procedures set forth in

sections 1602 through 1619 of this title shall apply to seizures of any property effected by

customs officers under any law enforced or administered by the Customs Service unless

such law specifies different procedures.” In this case, Le Marché was seized by United

States Immigration and Customs Enforcement officers acting pursuant to their authority

under 19 U.S.C. §§ 1595 and 1595a, statutes which do not specify their own burden-of-

proof standard. Therefore, the burden of proof set forth in 19 U.S.C. § 1615 applies.

 That result is unaffected by CAFRA because its burden-of-proof provision applies

only to forfeiture actions “brought under any civil forfeiture statute.” 18 U.S.C.

§ 983(d)(c)(1). As explained above, Section 1595a is not a “civil forfeiture statute” for

purposes of CAFRA, see 18 U.S.C. § 983(i), and therefore CAFRA’s burden-of-proof

provision is inapplicable to the government’s customs claim. We therefore find that the

district court correctly applied the pre-CAFRA burden-shifting approach of 19 U.S.C.

 8
 See Nnadi v. Richter, 976 F.2d 682, 686 (11th Cir. 1992) (applying 19 U.S.C. § 1615
to a forfeiture action under Section 1595a); United States v. $37,780 in U.S. Currency, 920
F.2d 159, 162 (2d Cir. 1990) (stating that 19 U.S.C. § 1615 governs forfeiture under the
customs laws); United States v. Little Al, 712 F.2d 133, 136 & n.2 (5th Cir. 1983) (“The
district court ordered the forfeiture under . . . 19 U.S.C. § 1595a[, under which] a showing
of probable cause . . . shifts the burden-of-proof.”); Hannibal, 2010 WL 2102484, at *3
(citing Section 1615 for the proposition that, in forfeiture actions brought pursuant to Section
1595a, the claimant bears the ultimate burden of “proving that the property is not in fact
forfeitable”); United States v. 863 Iranian Carpets, 981 F. Supp. 746, 747-48 (N.D.N.Y.
1997) (same).

 22
§ 1615 to this case.

III. The Constitutionality of the Forfeiture

 Davis argues that Le Marché’s forfeiture violated both the Excessive Fines Clause

of the Eighth Amendment and the Takings Clause of the Fifth Amendment. We address

those issues in turn, accepting the district court’s findings of fact unless clearly erroneous

and reviewing de novo the application of those facts to the constitutional standard. See

Bajakajian, 524 U.S. at 336 n.10.

 A. The Excessive Fines Clause

 The Eighth Amendment provides that “[e]xcessive bail shall not be required, nor

excessive fines imposed.” U.S. Const. amend. VIII. A fine refers to “a payment to a

sovereign as punishment for some offense.” Browning-Ferris Indus. v. Kelco Disposal,

Inc., 492 U.S. 257, 265 (1989). As a result, only those forfeitures that “may be

characterized, at least in part, as punitive will . . . be considered a fine for purposes of the

[Eighth Amendment].” Von Hofe v. United States, 492 F.3d 175, 182 (2d Cir. 2007),

citing Austin v. United States, 509 U.S. 602, 621-22 (1993).

 In Platter of Gold, we determined that a civil forfeiture action brought pursuant to

18 U.S.C. § 545 was remedial rather than punitive. See 184 F.3d at 139-401. Two

factors were central to our determination. First, the forfeiture “was not part of a criminal

prosecution,” but was rather “a civil in rem proceeding.” Id. at 139-40. Second, and

“[e]ven more important,” the forfeiture proceeding was brought under “a customs law,”

which are “traditionally viewed as non-punitive.” Id. at 140. As a result, the forfeiture

 23
was remedial and therefore “outside the scope of the Excessive Fines Clause.” Id.

 Those same factors apply with equal force in this case. As in Platter of Gold, the

statutory authority to seize and forfeit Le Marché came from a customs statute, see 19

U.S.C. § 1595a, which weighs strongly in favor of characterizing the forfeiture as

remedial. See Platter of Gold, 184 F.3d at 140. Furthermore, the government’s customs

claim is unconnected to any criminal prosecution, and Davis’s culpability is irrelevant to

its resolution. Cf. Austin, 509 U.S. at 619, 621-22 (contrasting “traditional forfeiture

statutes,” with drug-related forfeiture statutes that “expressly provide an ‘innocent owner’

defense” and are punitive because they focus “on the culpability of the owner”). We

therefore easily conclude that Le Marché’s forfeiture was remedial, not punitive. Cf. One

Lot Emerald Cut Stones v. United States, 409 U.S. 232, 237 (1972) (noting that the

forfeiture remedy provided under 19 U.S.C. § 1497 – another provision of the Tariff Act

of 1930 – is a “remedial rather than punitive” remedy). As a result, Davis’s claim under

the Excessive Fines Clause must fail.

 B. The Takings Clause

 Davis is also not entitled to compensation under the Takings Clause. Although the

Fifth Amendment states that no “private property [shall] be taken for public use, without

just compensation,” U.S. Const. amend. V, the Supreme Court has made clear that “[t]he

government may not be required to compensate an owner for property which it has

already lawfully acquired under the exercise of governmental authority other than the

power of eminent domain,” Bennis, 516 U.S. at 452, citing United States v. Fuller, 409

 24
U.S. 488, 492 (1973). As a result, “it has long been settled that if the government acts

pursuant to a forfeiture statute, it may seize personal property without compensating the

owner.” Redford v. U.S. Dep’t of Treas., 691 F.2d 471, 473 (10th Cir. 1982). In this

case, the United States acted pursuant to the forfeiture provisions of 19 U.S.C. § 1595a,

and was therefore entitled to seize Le Marché without compensating Davis.

IV. Attorney’s Fees Under 28 U.S.C. § 2465(b)(1)(A)

 “In the United States, the prevailing litigant is ordinarily not entitled to collect a

reasonable attorneys’ fee from the loser.” Alyeska Pipeline Serv. Co. v. Wilderness

Soc’y, 421 U.S. 240, 247 (1975). However, CAFRA authorizes the courts to provide fees

and other costs to claimants who “substantially prevail[]” in a “civil proceeding to forfeit

property.” 28 U.S.C. § 2465(b)(1)(A). Davis argues that the district court erred in

denying her attorney’s fees under that provision. According to Davis, her success in

defeating the government’s two forfeiture claims brought pursuant to 18 U.S.C.

§ 981(a)(1) makes her a prevailing party, even though the government ultimately

succeeded in its forfeiture action.

 This Court has not yet addressed the meaning of “substantially prevails” in the

context of 28 U.S.C. § 2465(b)(1)(A). We have, however, suggested that our

interpretation of Section 2465 should be informed by the case law applicable to similar

fee-shifting provisions. See United States v. Khan, 497 F.3d 204, 209 n.7 (2d Cir. 2007);

Union of Needletrades, Indus. & Textile Employees v. INS, 336 F.3d 200, 207 (2d Cir.

2003). That case law makes clear that Davis did not “substantially prevail” under any

 25
reasonable interpretation of that phrase.

 “The touchstone of the prevailing party inquiry must be the material alteration of

the legal relationship of the parties in a manner which Congress sought to promote in the

fee statute.” Tex. State Teachers Ass’n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-

93 (1989). In the case of Section 2465, Congress sought to address the “public outcry

over the government’s too-zealous pursuit of civil and criminal forfeiture,” without

“expand[ing] government liability respecting legitimate seizures of property plausibly

subject to forfeiture.” Khan, 497 F.3d at 208. Congress balanced those competing

priorities by limiting attorney’s fees to litigants who “substantially prevail[]” in their

attempts to retain possession of wrongfully seized property. See 28 U.S.C.

§ 2465(b)(1)(A). Given Congress’s intent not to assume liability for “legitimate

seizures,” Khan, 497 F.3d at 208, we conclude that claimants who fail to retain ownership

over any of the disputed property cannot collect attorney’s fees under 28 U.S.C.

§ 2465(b)(1)(A), for in those cases the seizure was undoubtedly legitimate.

 This conclusion is further supported by the Supreme Court’s decision in Sole v.

Wyner, which held that “a plaintiff who gains a preliminary injunction after an

abbreviated hearing, but is denied a permanent injunction after a dispositive adjudication

on the merits,” is not entitled to an award of attorney’s fees under the similar fee-shifting

provision in 42 U.S.C. § 1988(b). See 551 U.S. 74, 77, 86 (2007). The Court reasoned

that a party “who achieves a transient victory at the threshold of an action” is not entitled

to attorney’s fees “if, at the end of the litigation, her initial success is undone and she

 26
leaves the courthouse emptyhanded.” Id. at 78.

 We understand Sole’s focus on the litigation’s ultimate outcome to require us first

to identify the claimant’s purpose for challenging the forfeiture, and then to determine

whether the claimant achieved that purpose in some measurable way. In this case, the

district court correctly concluded that Davis “litigated this action in order to obtain title to

the artwork.” United States v. Painting Known as “Le Marché”, No. 06 Civ. 12994, 2010

WL 2229159, at *1 (S.D.N.Y. May 25, 2010). Davis’s partial victory at summary

judgment merely narrowed the issues presented in this case. It did not entitle her to retain

ownership of Le Marché. Instead, the forfeiture proceedings continued, and Davis was

ultimately forced to relinquish possession of the monotype. Because Davis’s purpose was

to obtain title to Le Marché, not simply to elucidate the legal theories under which that

title could and could not be defeated, and because the litigation resulted in that title

vesting in the United States, Davis cannot be said to have obtained any of the relief that

she sought. We therefore conclude that Davis did not “substantially prevail[]” within the

meaning of 28 U.S.C. § 2465(b)(1)(A).

 CONCLUSION

 We have considered all of Davis’s remaining arguments on appeal and find them

to be without merit. Accordingly, for the foregoing reasons, the district court’s judgment

of forfeiture and its order denying Davis attorney’s fees are AFFIRMED.

 27