*United States v. Ross*

# In the
# United States Court of Appeals
# for the Second Circuit

———————

AUGUST TERM 2024

No. 24-1421-cv

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

RICHARD STUART ROSS,
*Claimant-Appellant,*

COMPANY 1,
*Claimant,*

$4,183,402.74 IN U.S. CURRENCY, SEIZED FROM REGIONS BANK ACCOUNT *1113
R.S. IOTA TRUST ACCOUNT, $722,327.52 IN U.S. CURRENCY, SEIZED FROM
REGIONS GENERAL LEDGER (GL) *200 BEARING COST CODE (CC) *300,
*Defendants-in-Rem.*[*]

———————

On Appeal from the United States District Court
for the Northern District of New York

———————

ARGUED: MAY 8, 2025

DECIDED: DECEMBER 4, 2025

———————

Before: RAGGI, LOHIER, and CARNEY, *Circuit Judges.*

———————

[*] The Clerk of Court is directed to amend the official caption as shown above.

_____

On appeal from judgments entered in the United States District Court for the Northern District of New York (Sharpe, Scullin, *JJ.*), claimant Ross, the owner of a bank account that received a fraudulent transfer of $29.6 million in October 2021—most of which was transferred out of the account that same month—challenges (1) an award forfeiting to the United States $3,692,617.15 of defendants-*in-rem* for which no claim was filed; (2) the dismissal without prejudice of forfeiture proceedings against $1,213,113.11 of defendants-*in-rem* for which Ross filed a claim; (3) the entry of a certificate of reasonable cause as to that $1.21 million; and (4) the denial of claimant's motion for attorney fees and costs. On the United States' concession of error, we vacate the certificate of reasonable cause. Claimant's remaining arguments being without merit, we affirm the judgments in all other respects.

AFFIRMED IN PART and VACATED IN PART.
_____

STEPHEN F. RAIOLA, Kibler Fowler & Cave, LLP, New York, N.Y. (Sangyoon Nathan Park, Kibler Fowler & Cave, LLP, New York, N.Y.; Zien Halwani, Kibler Fowler & Cave, LLP, Los Angeles, Cal., *on the brief*), *for Claimant-Appellant.*

ELIZABETH A. CONGER, Assistant United States Attorney, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, N.Y., *for Plaintiff-Appellee.*

Michael L. Yaeger, Carlton Fields, P.A., New York, N.Y.; Nathaniel G. Foell, Carlton Fields, P.A., Tampa, Fla., *for*

*Amici Curiae Cato Institute, Goldwater Institute, and Manhattan Institute, in support of Claimant-Appellant.*

Paul M. Sherman, Institute for Justice, Arlington, Va., *for Amicus Curiae Institute for Justice, in support of Claimant-Appellant.*

David C. Tryon, Alex M. Certo, The Buckeye Institute, Columbus, Ohio; Joel S. Nolette, Wiley Rein LLP, Washington, D.C., *for Amici Curiae The Rutherford Institute and The Buckeye Institute, in support of Claimant-Appellant.*

————————————

REENA RAGGI, *Circuit Judge*:

In this civil forfeiture action brought by plaintiff United States in the United States District Court for the Northern District of New York (Gary L. Sharpe, Frederick J. Scullin, Jr., *Judges*), defendants-*in-rem* are seized monies totaling approximately $4.91 million: (1) $4,183,402.74 from a trust account held by claimant Richard Stuart Ross at the Alabama branch of Regions Bank (the "Regions Bank Account"); and (2) $722,327.52 transferred out of that account and seized by the government after recall by the bank. Before the district court, the government alleged that some $29.6 million were fraudulently transferred into the Regions Bank Account in October 2021, much of which was moved out of the account before the end of the month. It asserted that the seized defendants-*in-rem* were forfeitable under 18 U.S.C. § 981(a)(1)(A) & (C) as proceeds of the aforementioned fraud, or as property involved in money laundering.[1] It further

_____

[1] Title 18 U.S.C. § 981(a) states in relevant part:

submitted that defendants-*in-rem* were forfeitable under *id.* § 984 as fungible property that need not be directly traced to these offenses.[2]

On this appeal, Ross challenges judgments entered on March 6, 2023, and March 22, 2024, (1) ordering forfeiture of $3,692,617.15 ("$3.69 million") of defendants-*in-rem* to the United States to be disposed of in accordance with law;

----

(1) The following property is subject to forfeiture to the United States:

> (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of [*inter alia*, laundering of monetary instruments, and engaging in monetary transactions in property derived from specified unlawful activity, *see* 18 U.S.C. §§ 1956, 1957], or any property traceable to such property.
>
> . . . .
>
> (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of [*inter alia*, computer fraud and abuse, *see id.* § 1030] or any offense constituting "specified unlawful activity" [such as wire fraud activity, *see id.* § 1956(c)(7)(A)] . . . or a conspiracy to commit such offense.

[2] Title 18 U.S.C. § 984(a) states in relevant part:

(a)(1) In any forfeiture action in rem in which the subject property is cash . . . [or] funds deposited in an account in a financial institution . . .

> (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
>
> (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

(2) . . . [A]ny identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section [brought within 1 year from the date of the offense].

(2) dismissing without prejudice the forfeiture action as to the remaining $1,213,113.11 ("$1.21 million") of defendants-*in-rem*; (3) granting a certificate of reasonable cause as to the seizure of that $1.21 million; (4) denying Ross attorney fees, costs, and interest; and (5) denying reconsideration of some of these decisions. *See* Judgment, *United States v. $4,183,402.74 in U.S. Currency*, No. 22-CV-138 (GLS) (N.D.N.Y. Mar. 6, 2023), ECF No. 60 ("March 6, 2023 Judgment"); Memorandum Decision and Order, *United States v. $4,183,402.74 in U.S. Currency*, No. 22-CV-138 (FJS), 2024 WL 2763864 (N.D.N.Y. Mar. 22, 2024) ("March 22, 2024 Judgment"). Ross argues that (1) the district court exceeded its authority in entering partial default judgment against $3.69 million of defendants-*in-rem*; (2) the stay of discovery as to the remaining $1.21 million violated his due process right to a timely probable cause hearing; (3) the dismissal of forfeiture proceedings against that $1.21 million and the government's subsequent return of those monies to him mean he "substantially prevail[ed]" against the United States, thereby entitling him to attorney fees, costs, and interest under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 28 U.S.C. § 2465(b)(1); and (4) the entry of a certificate of reasonable cause as to seizure of the $1.21 million was unwarranted, *see id.* § 2465(a)(2).

On the government's concession of error, we vacate the certificate of reasonable cause. Ross's remaining arguments being without merit, we affirm the challenged judgments in all other respects.

## BACKGROUND[3]

### I. Initial Seizure of Defendants-*In-Rem*

Claimant Ross is a Florida-licensed attorney who held client funds in trust in the Regions Bank Account. On November 16, 2021, federal authorities sought

---

[3] The following facts are undisputed except as otherwise noted.

and obtained a warrant to seize all funds then on deposit in the Regions Bank Account as property subject to forfeiture. *See* 18 U.S.C. §§ 981(a)(1), 982(a).

In the affidavit submitted in support of the warrant, a special agent of the United States Secret Service alleged "probable cause to believe that at least $2,973,716.96 [then in the Regions Bank Account] are the proceeds of the business email compromise scheme" to defraud Utica-based Rising Phoenix Holdings, LLC ("Phoenix"). J. App'x 378 (emphasis omitted). The agent explained that in October 2021, Phoenix was contractually obligated to make certain payments to a subcontractor. On October 6, 2021, Phoenix received an email that appeared to come from the subcontractor but that, in fact, used a fraudulent address. The email instructed Phoenix to wire the anticipated $29.6 million payment to the Regions Bank Account. Mistakenly thinking the account belonged to its subcontractor, Phoenix so wired the money.

The next day, October 7, 2021, an individual claiming to be Ross unsuccessfully attempted to access the Regions Bank Account. Soon after, Phoenix realized that its subcontractor had not sent the October 6 email, and it reported the fraud to law enforcement authorities.

An ensuing investigation revealed that prior to October 7, 2021, the Regions Bank Account showed a balance of only $3,877.33. Over the next fifteen days, $38.8 million were transferred into the account: (1) $29.6 million from Phoenix on October 7; (2) $8.0 million from Richard Stuart on October 15; (3) $4,043 from Jetimpex Inc. on October 21; and (4) $1.2 million from Advantage Title on October 22. In eleven October transactions, $36.1 million were transferred from the Regions Bank Account to four banks in Mexico, one bank in California, and one bank in Delaware. Over the following weeks, Regions Bank recalled $1.5 million of these funds from the domestic banks. Thus, when the government executed the

6

November 16, 2021 seizure warrant on the Regions Bank Account, it contained a total of $4.18 million.

Federal agents subsequently interviewed Ross, who admitted knowing of the October-deposited funds and making the outgoing wire transfers. In a declaration filed with the district court, Ross professed to having thought that the deposited funds belonged to a new Mexican client who had settled a copyright dispute, apparently with minimal involvement by Ross except for the use of his bank account. Ross then distributed the monies as instructed by the client.

By January 6, 2022, Regions Bank had recalled another $722,327.52, these monies transferred from the Regions Bank Account to Banco Monex in Mexico. The government seized those monies from Regions Bank pursuant to a second warrant obtained on January 19, 2022.

## II.    Forfeiture Proceeding

On February 14, 2022, the United States commenced this forfeiture action. Its complaint alleged that the seized monies, now denominated as defendants-*in-rem*, were either commingled with or the direct proceeds of a wire and/or computer fraud perpetrated on Phoenix in violation of 18 U.S.C. §§ 1030(a)(4), 1343.[4] It further alleged that proceeds were involved in, or traceable to property

---

[4] Title 18 U.S.C. § 1030(a)(4) makes it a crime for any person,

> knowingly and with intent to defraud, [to] access[] a protected computer without authorization, . . . and by means of such conduct [to] further[] the intended fraud and obtain[] anything of value.

Title 18 U.S.C. § 1343 makes it a crime for any person,

> having devised . . . any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or

involved in, a violation of the federal money laundering statutes, *id.* §§ 1956(a), 1956(h), 1957.[5]  Thus, the government sought and obtained an arrest warrant for the defendants-*in-rem*.[6]

In February and March 2022, the forfeiture complaint was sent by mail to potential claimants, with notice also published on the government's forfeiture website.  Persons wishing to assert interests in the monies at issue were instructed that they must file their claims with the district court by April 17, 2022.  On March 17, 2022, Ross filed a "partial claim for $1,213,113.11" of defendants-*in-rem*.  J. App'x 26 (emphasis omitted).  He filed no claim as to the remaining $3.69 million of defendants-*in-rem*.  On March 24, 2022, Ross petitioned the court for an order

---

> promises, [to] transmit[] or cause[] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

[5] As relevant here, the federal money laundering statute makes it a crime for any person,

> knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, [to] conduct[] or attempt[] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity[.]

18 U.S.C. § 1956(a)(1).  It also criminalizes "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity."  *Id.* § 1957(a); *see id.* § 1956(c)(7) (defining "specified unlawful activity" as any act "constituting" offense relating to wire fraud).

[6] *See* Supplemental Rules of Civil Procedure for Admiralty or Maritime Claims and Asset Forfeiture Actions (2022) ("Supp. Rule") G(3)(b)(i) ("If the defendant is not real property" and "if it is in the government's possession, custody, or control," then "the clerk must issue a warrant to arrest the property.").

releasing $1.21 million of defendants-*in-rem* to him, asserting that $11,802 were clients' funds and $1.20 million represented "proceeds from the sale of Ross's personal primary residence," the latter of which were wired into the Regions Bank Account on October 22, 2021. *Id.* at 29, 29 nn.1–2. Also, on April 6, 2022, Ross filed an answer to the complaint, generally denying allegations of criminal activity.

On April 8, 2022, Phoenix timely filed a claim to the same $1.21 million, asserting that it was "the owner of the funds" fraudulently transferred into the Regions Bank Account. *Id.* at 48. Although Phoenix, denominated "Company 1" in the case caption, professed an interest in all monies seized from that account, it chose not to file a claim to the remaining $3.69 million, hoping "to enable the Government to file a motion for a partial default judgment" as to those monies, thereby facilitating their return to Phoenix. *Id.* at 49 n.2.

On June 2, 2022, the district court entered an order barring any future claims to the seized monies and directing claimants to proceed to discovery as to the $1.21 million. On June 6, 2022, Ross served interrogatories on the government asking it to disclose, *inter alia*, its basis for thinking that he was not an innocent owner of the claimed monies.

Instead of responding to that inquiry, on June 13, 2022, the government requested that the Clerk of Court notice a partial default as to the $3.69 million of defendants-*in-rem* for which no claim had been filed. *See* Fed. R. Civ. P. 55(a). The government also sought—and on August 17, 2022, obtained—a stay of discovery in the civil forfeiture proceeding pending completion of a parallel criminal investigation. *See* 18 U.S.C. § 981(g)(1). Ross opposed both the partial default and the stay of discovery.

On November 2, 2022, Ross withdrew his discovery requests and moved to lift the stay. The government did not oppose Ross's motion, and itself moved

voluntarily to dismiss without prejudice the forfeiture action against the contested $1.21 million of defendants-*in-rem*, requesting entry of a certificate of reasonable cause as to the seizure of those monies pursuant to 28 U.S.C. § 2465(a)(2).

On March 6, 2023, the district court entered the challenged judgment ordering that $3.69 million of defendants-*in-rem* be "forfeited to the United States of America to be disposed of in accordance with the law." March 6, 2023 Judgment at 1. In so ruling, the district court concluded that Ross lacked standing to challenge the forfeiture of these monies, having failed to file a timely claim as to them. The judgment further dismissed without prejudice forfeiture proceedings against the $1.21 million for which Ross and Phoenix had filed timely claims and granted a certificate of reasonable cause as to the seizure of those monies.

Thereafter, Ross moved for reconsideration of the grant of a certificate of reasonable cause and for $108,633 in attorney fees, $530.93 in costs, and pre- and post-judgment interest under CAFRA.[7] On March 22, 2024, the district court denied the motion in its entirety, ruling as to attorney fees, costs, and interest that Ross had not "substantially prevailed" so as to be entitled to such an award under CAFRA. March 22, 2024 Judgment, 2024 WL 2763864, at *2.

Ross timely appealed from both the March 6, 2023 and March 22, 2024 judgments.

## DISCUSSION

### I. Partial Default Judgment as to $3.69 Million

Ross contends that the district court exceeded its authority in entering a default judgment against $3.69 million of the total $4.9 million of defendants-*in-rem* because he is an "innocent owner" of $1.21 million of this seized total which,

---

[7] *See* 28 U.S.C. § 2465(a)(2), (b)(1) (discussed *infra* in points II.B. and D).

by law, "shall not be forfeited under any civil forfeiture statute." 18 U.S.C. § 983(d)(1). He further faults the district court for failing to make an appropriate inquiry into whether the government could prove facts supporting forfeiture of any of defendants-*in-rem*.

In entering the challenged default judgment over Ross's objection, the district court concluded that he lacked standing to object to the forfeiture of $3.69 million of defendants-*in-rem* because he never filed a timely claim to those monies as required by law; instead, he filed a claim only as to the remaining $1.21 million. On *de novo* review of that standing determination and its effect on Ross's appellate challenge to forfeiture of $3.69 million, *see United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999), we identify no error.

In *Cambio Exacto*, this court clearly held that before a claimant can be heard to contest a civil forfeiture claim, he must demonstrate both Article III and statutory standing. *See id.* (requiring claimants to demonstrate both statutory standing "governing their claims" and Article III standing "as required for any action brought in federal court"); *accord United States v. Technodyne LLC*, 753 F.3d 368, 380 (2d Cir. 2014).[8] Section 983(d)(1) creates no exception for persons claiming to be "innocent owners." Rather, it states that a person contesting forfeiture on the grounds of innocent ownership "shall have the burden of proving that [he] is an

---

[8] Since *Cambio Exacto*, the Supreme Court has clarified that "what has been called 'statutory standing' in fact" does not relate to standing but is instead simply "a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Am. Psych. Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)). Because the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions use the word "standing," *see, e.g.*, Supp. Rule G(8), we continue to do so here. But as we recently observed in the civil forfeiture context, the term "statutory standing" is "a misleading shorthand," as it does not in fact "implicate [a court's] jurisdiction." *United States v. Starling*, 76 F.4th 92, 101 n.4 (2d Cir. 2023) (internal quotation marks omitted).

innocent owner by a preponderance of the evidence." 18 U.S.C. § 983(d)(1). Implicit in this burden assignment is an innocent-owner claimant's obligation to demonstrate his standing to be heard, the same as any other claimant. That conclusion finds support in precedent explaining that "[e]stablishing standing in the context of a forfeiture action before considering the merits of a motion to dismiss simply makes sense: the defendant in such an action is the res, not the claimant. Without standing, the claimant lacks the right to bring any motion, regardless of the basis." *United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014).[9]

The requirement to demonstrate Article III standing before being heard on an innocent-owner challenge to forfeiture is hardly onerous: a person need show only a "facially colorable interest" in the property at issue; whether he "ultimately proves the existence of that interest" is a question for a later stage in the proceedings. *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 & n.10 (2d Cir. 2002) (internal quotation marks omitted).

Here, there is no question that defendants-*in-rem* were monies seized from or at one time held in the Regions Bank Account, and that Ross claims personal ownership of $1.20 million of these monies. That sufficed to afford him constitutional standing to challenge the forfeiture of that $1.20 million. *See Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1158 (2d Cir. 1994) ("[A]n allegation of

---

[9] While we have construed *Vazquez-Alvarez* to apply only to dispositive motions, *see United States v. Starling*, 76 F.4th at 101 n.4 ("What we have described as 'statutory standing' operates as an obstacle only to dispositive motions which follow from establishing the initial claim."), its quoted language applies to a person claiming innocent ownership, who is effectively seeking a dispositive ruling in his favor. *See generally United States v. One Parcel of Property Located at 121 Allen Place, Hartford, Conn.*, 75 F.3d 118, 120 (2d Cir. 1996) (finding sufficient evidence to establish innocent-owner defense and, therefore, reversing decision overturning verdict and ordering forfeiture).

12

ownership and some evidence of ownership are together sufficient to establish [constitutional] standing to contest a civil forfeiture."). To the extent he was a "mere custodian" of seized monies belonging to others, however, Ross lacked constitutional standing to challenge the forfeiture of those monies. *United States v. Cambio Exacto*, 166 F.3d at 527 (stating that "mere custodian" of *res*, with only a "naked claim of possession," cannot demonstrate Article III standing). Ross does not appear to contend otherwise. At most, he argues that the default forfeiture of monies in which he did not claim an ownership interest nevertheless caused him collateral injury insofar as he was denied attorney fees. *Cf. id.* at 528 (recognizing possible standing of money-transmitter claimants' who could be liable to customers in amount equal to forfeited funds). That argument fails not only because Ross asserts no such potential liability akin to that in *Cambio Exacto*, but also because he has no right to an attorney fee award in this case, see *infra* at II.B., and, in any event, failed to establish statutory standing as to the $3.69 million of defendants-*in-rem* forfeited on default.

To establish statutory standing (that is, a cause of action), Ross needed to satisfy the procedures set forth in 18 U.S.C. § 983(a) and Supp. Rule G. Those procedures require a person asserting an interest in property that is the subject of a civil forfeiture complaint to file a verified claim "not later than 30 days" after service of the government's complaint or publication of notice of the filing of that complaint. 18 U.S.C. § 983(a)(4)(A).

Ross does not dispute that he was served with the forfeiture complaint. With the assistance of counsel, he thereafter filed a timely verified partial claim to $1.21 million of defendants-*in-rem*. But what he did *not* do was file a claim to the other $3.69 million ultimately forfeited on a default judgment. He did not file such

a claim within 30 days of service of the complaint.[10]  Nor did he ever seek leave from the district court to file such a claim *nunc pro tunc*, as he might have done in opposing the government's motion for a default judgment.  *Cf. United States v. Starling*, 76 F.4th at 101 n.4 (stating that *pro se* putative claimant "could be granted leave to file claims *nunc pro tunc*" prior to "dispositive motions which follow from establishing the initial claim.").

To be sure, one of the fourteen affirmative defenses Ross raised in his answer to the government's forfeiture complaint was innocent ownership.  *See* J. App'x 44 ("Claimant, as an innocent owner, did not know, or have reason to know, that the property in question was being employed or was likely to be employed in criminal activity.").  But, by his own verified filing, Ross was a "claimant" only to $1.21 million of defendants-*in-rem*.  Thus, his statutory standing to assert an innocent-owner defense to forfeiture pertained only to that amount, not to the remaining $3.69 million for which he had filed no claim and asserted no evidence of ownership.

In sum, because Ross failed to demonstrate either constitutional or statutory standing to contest forfeiture of $3.69 million of defendants-*in-rem*, he was not entitled to challenge, either in the district court or in this court, the adequacy of government proof or the sufficiency of judicial findings supporting forfeiture of those monies.  *See* Supp. Rule G(8)(c)(ii) advisory committee's note to the 2006 amendments ("A claimant who lacks standing is not entitled to challenge the forfeiture on the merits."); *see also Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) ("[S]tanding must be met by persons seeking appellate review, just as it must be

---

[10] Ross does not argue on appeal, as he did in the district court, that he in fact had 60 days to file a claim because the government seized defendants-*in-rem* before filing a complaint. In any event, the point is not relevant because Ross did not file a verified claim to the forfeited $3.69 million within 60 days or, indeed, at any time.

14

met by persons appearing in courts of first instance." (internal quotation marks omitted)); *cf. United States v. Yalincak*, 30 F.4th 115, 131 (2d Cir. 2022) (holding, in criminal restitution context, that defendant lacks standing to challenge district court reasoning absent showing of "concrete stake in the issues raised").

## II. Dismissal of Forfeiture Proceedings Against the Contested $1.21 Million

Insofar as Ross did file a timely claim as to $1.21 million of defendants-*in-rem*, he argues that the district court's stay of discovery deprived him of his due process right to a timely hearing. He further faults the district court for failing to award him attorney fees, costs, and interest on the ground that he did not substantially prevail on his claim; dismissing the forfeiture proceeding without prejudice as to the claimed $1.21 million; and entering a certificate of reasonable cause as to the seizure of those monies. We have carefully considered these arguments and conclude that all but the last fail on the merits.

### A. Due Process Challenge to Stay

#### 1. Mootness

Neither the government nor Ross has addressed whether his stay challenge is rendered moot by the district court's dismissal without prejudice of the forfeiture proceeding with respect to the claimed $1.21 million and the government's subsequent return of those monies to Ross. *See generally Adeleke v. United States*, 355 F.3d 144, 148 (2d Cir. 2004) (observing, with respect to criminal forfeiture, that return of seized property renders claimant's request for equitable relief moot). While we generally do not consider issues not briefed or argued before us or the district court, because mootness implicates our jurisdiction, we must do so here. *See Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 68 (2d Cir. 2023) (noting court's independent obligation to assure itself of jurisdiction).

15

The Constitution limits federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. That limitation requires that "an actual controversy" be extant at all stages of a judicial proceeding, "not merely at the time the complaint is filed." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016) (internal quotation marks omitted). Thus, if at any point in a case, "an intervening circumstance deprives the plaintiff"—or, in a forfeiture proceeding, a claimant— "of a personal stake in the outcome of the lawsuit," the action or the claim "must be dismissed as moot." *Id.* at 160–61 (internal quotation marks omitted). Put another way, a "case becomes moot . . . when it is impossible for a court to grant any effectual relief whatever to the prevailing party" or claimant. *Id.* at 161 (internal quotation marks omitted).

To determine if that is the situation here, we consider the relief Ross sought from the district court. Initially, he petitioned for "an order directing the government to release **$1,213,113.11**" of defendants-*in-rem* seized from his Regions Bank Account. J. App'x 29 (emphasis in original). Subsequently, in opposing the government motions for, *inter alia*, voluntary dismissal without prejudice of the forfeiture proceeding insofar as it pertained to that $1.21 million and for a default judgment forfeiting $3.69 million, Ross urged the district court to enter one of two proposed orders. The first order would have denied the government dismissal without prejudice of the forfeiture proceeding as to the $1.21 million, denied a certificate of reasonable cause as to the seizure of those monies, and entered a final judgment in Ross's favor ordering the return of the $1.21 million to him. *See id.* at 284. Alternatively, if the district court were to grant the government's motion to dismiss, Ross submitted a second order that would have entered such dismissal with prejudice, ordered that the $1.21 million be returned to him, and denied a certificate of reasonable cause. *See id.* at 286. The second proposed order would further have denied a default judgment forfeiting $3.69 million of defendants-*in-rem* "on the grounds that those funds are not forfeitable," "dismissed" the

16

forfeiture proceeding pertaining to those monies, and ordered the $3.69 million returned not to Ross but to Phoenix. *Id.* at 287.

The district court granted the government's motion to enter a default judgment forfeiting $3.69 million of defendants-*in-rem*, to dismiss without prejudice the forfeiture proceeding as to $1.21 million of defendants-*in-rem*, and to enter a certificate of reasonable cause as to the seizure of those monies. Thereafter, the government returned $1.21 million to Ross, and $3.69 million to Phoenix. Thus, we consider what, if any, judicial relief Ross might still obtain if this court were to hear his due process challenge to the stay of proceedings.

It appears that what he might obtain would be a ruling ordering dismissal *with prejudice* of the forfeiture proceedings pertaining to $1.21 million of defendants-*in-rem*. The Supreme Court has "analog[ized]" a civil forfeiture claimant's due process right against post-seizure delay "to a [criminal] defendant's right to a speedy trial." *Culley v. Marshall*, 601 U.S. 377, 386 (2024) (internal quotation marks omitted). The remedy for a constitutional speedy trial violation is dismissal of the indictment with prejudice. *See United States v. Moreno*, 789 F.3d 72, 78 (2d Cir. 2015). The remedy for a statutory speedy trial violation is dismissal of the indictment, *see* 18 U.S.C. § 3162(a)(2); *Zedner v. United States*, 547 U.S. 489, 509 (2006), which a district court has the discretion to enter "with or without prejudice," *United States v. Bert*, 814 F.3d 70, 79 (2d Cir. 2016) (internal quotation marks omitted). A without-prejudice dismissal leaves the defendant open to re-indictment subject to the statute of limitations. A with-prejudice dismissal forecloses that possibility.

We will review a district court's choice as between with- or without-prejudice dismissal, even in the statutory context, to ensure that "statutory factors are properly considered" and "supporting factual findings are not clearly in error." *Id.* (internal quotation marks omitted). Thus, the availability of such

17

review and the possibility of a ruling that dismissal without prejudice was erroneous even as a matter of discretion weigh against mootness.

The same reasoning applies here. The challenged dismissal without prejudice leaves Ross open to future seizure and forfeiture of the returned $1.21 million subject to the applicable statute of limitations. For a forfeiture proceeding brought under 18 U.S.C. § 981(a)(1), the limitations period is five years from "the time when the alleged offense was discovered," 19 U.S.C. § 1621, which in this case was October 2021, putting Ross at risk of a renewed forfeiture action through October 2026. A ruling directing dismissal with prejudice would foreclose such a proceeding and, thus, eliminate that risk. Accordingly, even though the $1.21 million of defendants-*in-rem* claimed by Ross has been returned to him, because it is at least possible for him to secure a dismissal with prejudice, Ross's stay challenge is not moot, and we proceed to consider its merits.

## 2. The Challenged Stay Did Not Violate Due Process

Due process demands that those with an interest in property seized by the government be given notice and an opportunity for a "*timely* post-seizure forfeiture hearing." *Culley v. Marshall*, 601 U.S. at 384 (emphasis in original). The Supreme Court has recognized that a delay in resolving a forfeiture action "may become so prolonged that the dispossessed property owner has been deprived of a meaningful hearing at a meaningful time." *Id.* at 386 (internal quotation marks omitted). This is not such a case.

To determine the reasonableness of a forfeiture-proceeding delay, the Supreme Court has borrowed the four-factor test applied to Sixth Amendment speedy-trial challenges. *See Barker v. Wingo*, 407 U.S. 514, 530–33 (1972) (considering length of delay, reason for delay, defendant's assertion of right to prompt trial, and prejudice to defendant); *United States v. Eight Thousand Eight*

18

*Hundred & Fifty Dollars ($8,850) in U.S. Currency* ("*United States v. $8,850*"), 461 U.S. 555, 564–65 (1983) (applying *Barker v. Wingo* factors to claim of delay in forfeiture proceedings).

In applying that test here, it is useful to review relevant chronology. The initial seizure of monies from the Regions Bank Account occurred on November 16, 2021. Three months later, on February 14, 2022, the government filed its civil forfeiture complaint, giving Ross notice of that complaint on or about March 4, 2022. On March 17, 2022, Ross filed a partial claim to $1.21 million of the monies at issue in the forfeiture proceeding and, on June 6, 2022, he sought discovery, serving interrogatories that requested, *inter alia*, "any evidence" showing that he was other than an "Innocent Owner" of the claimed monies. J. App'x 119–20. On July 5, 2022, the government sought and, on August 17, 2022, the district court granted a stay of the civil forfeiture proceeding pending resolution of a parallel criminal investigation. On November 2, 2022, Ross withdrew his discovery requests and moved to lift the stay. The government did not oppose that motion, and itself requested a judgment forfeiting $3.69 million of defendants-*in-rem* for which no claim had been filed, dismissing without prejudice forfeiture proceedings against the remaining $1.21 million of defendants-*in-rem*, and granting a certificate of reasonable cause as to the seizure of those monies. Over Ross's objections, the district court granted the government's motion in all respects on March 2, 2023, entering judgment on March 6, 2023.

Thus, from initial seizure on November 16, 2021, to final judgment on March 6, 2023, this forfeiture proceeding took approximately 16 months. Ross does not argue that the three-month period from initial seizure to the February 14, 2022 complaint was by itself "so prolonged" that the failure to afford him a hearing during that time denied him due process. *Culley v. Marshall*, 601 U.S. at 386. Nor does he argue unreasonable delay in the four-month period between the filing of

that complaint and his June 6, 2022 request for discovery. Rather, the focus of Ross's undue-delay argument is on the stay sought by the government and entered by the district court, which appears to have denied him civil discovery for approximately five months, from June 6, 2022, when he first filed interrogatories, until November 2, 2022, when he withdrew his discovery request and the parties proceeded to litigate over the final judgment in the case.

The reason for the challenged stay was to allow the government to conduct a related criminal investigation into monies moving in and out of the Regions Bank Account, including but not limited to the $29.6 million that Phoenix was fraudulently induced to transfer into that account in October 2021, most of which was promptly transferred to other domestic and international banks. A stay was statutorily authorized in such circumstances by 18 U.S.C. § 981(g)(1), which states that "the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." In making that determination, a court properly evaluates "the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings." *Id.* § 981(g)(4).

Here, these factors supported a stay. The parties and witnesses in the two actions were decidedly similar: the United States was both the plaintiff in the civil forfeiture action and the investigating authority in the related criminal matter. Ross was both a claimant in the forfeiture action and a subject of the criminal investigation. The circumstances involved in the two proceedings were also similar. The forfeiture proceeding concerned almost five million dollars seized from or that had moved through the Regions Bank Account at and about the time of a $29.6 million fraudulent transfer into that account. The criminal investigation concerned these same monies. While Ross claimed that $1.21 million of the seized

20

monies were legitimately derived, either because they were being held for a client or were payment for the recent sale of his home, the totality of circumstances certainly warranted further criminal investigation into the sources of *all* monies in the Regions Bank Account in October 2021; the movement of Phoenix fraud proceeds laundered through that account; and Ross's own knowledge of, role in, and possible compensation for the use of his account to secure and launder criminal proceeds. *See infra* at 35–36 (discussing "money mules" compensated for permitting their bank accounts to be used to launder criminal proceeds). The district court could reasonably conclude that such an investigation would be impeded by ongoing discovery in the civil forfeiture action in that requiring the government to respond to Ross's interrogatories would necessarily alert Ross (and any possible confederates) to what the government then knew about the criminal use of the Regions Bank Account, thereby affording an opportunity to conceal or destroy other evidence of criminal culpability before it could be revealed by the government's investigation. That all-too-real possibility satisfied § 981(g)(1)'s requirement for a stay.

As for the length of the stay, while not temporally limited when imposed, it in fact lasted only a few months. This was not unreasonable given the volume of transactions—some international—in and out of the Regions Bank Account that needed to be investigated both to identify persons responsible for the $29.6 million Phoenix fraud and to determine the legitimacy of the transactions underlying Ross's claim to $1.21 million. Further, this was a case in which the government needed to comply with a Mutual Legal Assistance Treaty with Mexico to secure that country's assistance in investigating multi-million-dollar transfers from the Regions Bank Account to four banks in that country and in recovering any of those monies. As the Supreme Court has recognized, investigations requiring international assistance are "inherently . . . time-consuming," *United States v. $8,850*, 461 U.S. at 567, and here, as in that case, there is no indication that the

investigation was not diligently pursued, *see id.* at 567–68. Thus, just as an 18-month delay in forfeiture proceedings was not found to be unreasonable in *United States v. $8,850, see id.* at 569–70, we conclude that, under these circumstances, neither the five-month delay in discovery resulting from the challenged stay nor even the 16-month period from seizure to final judgment in the forfeiture action was so long as to have denied Ross due process.

## B.    Denial of Attorney Fees, Costs, and Interest

CAFRA states that, "in any civil proceeding to forfeit property under any provision of Federal law in which the claimant *substantially prevails*, the United States shall be liable for . . . reasonable attorney fees and other litigation costs reasonably incurred by the claimant." 28 U.S.C. § 2465(b)(1)(A) (emphasis added). Ross argues that the district court misconstrued CAFRA's "substantially prevails" requirement in denying him fees, costs, and interest[11] on the ground that he had neither "obtained [an] enforceable judgment on the merits," nor effected a "material alteration to the relationships of the parties." March 22, 2024 Judgment, 2024 WL 2763864, at *2, *4. Ross acknowledges that this conclusion finds support in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.* ("*Buckhannon v. W. Va.*"), 532 U.S. 598, 602–05 (2001), but he submits that *Buckhannon* should not control here because there the Supreme Court did not construe the phrase "substantially prevails" as used in CAFRA but, rather, the phrase "prevailing party" as used in different fee-shifting statutes. Ross maintains that he substantially prevailed in this forfeiture proceeding because his objective was to obtain the return of $1.21 million of defendants-*in-rem,* which he achieved when the district court dismissed the action as against those monies, and the

---

[11] *See* 28 U.S.C. § 2465(b)(1)(B) & (C) (authorizing interest awards). Hereafter, we refer simply to "attorney fees and costs," recognizing that interest is authorized on such awards.

government subsequently returned the monies to him. *See CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 431 (2016) (looking to whether defendant has "fulfilled its primary objective" regardless of "precise reason for the court's decision" in determining if it prevailed).

We generally review a denial of attorney fees and costs for abuse of discretion but where, as here, abuse is attributed to an error in statutory construction, we review that question of law *de novo. See Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009) ("Inasmuch as the resolution of the district court's grant of attorney[] fees implicates questions of law, our review is *de novo*."); *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 334 (2d Cir. 2011) (noting "matter of statutory construction" is "question of law we review de novo"). Upon such review, we identify no error.

The above-quoted text from CAFRA provides an explicit statutory exception to the American rule generally requiring litigants in a judicial proceeding to bear their own attorney fees and costs. *See Buckhannon v. W. Va.*, 532 U.S. at 602 (recognizing operation of American rule "absent explicit statutory authority" (internal quotation marks omitted)); *accord Lackey v. Stinnie*, 604 U.S. 192, 199–200 (2025) (stating that judiciary will not itself create rule, independent of statute, awarding attorney fees and costs). The CAFRA exception mandates rather than permits an award of attorney fees and costs—"the United States shall be liable"—but only to a claimant who "substantially prevails" in a civil forfeiture proceeding under federal law. 28 U.S.C § 2465(b)(1). Because CAFRA mandates payments by the United States, it is properly recognized as a waiver of sovereign immunity and, as such, must be construed strictly so as not to enlarge the waiver beyond what the language of the statute requires. *See generally Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685 (1983) (discussing proper construction of waivers of

23

sovereign immunity in context of Clean Air Act); *Adeleke v. United States*, 355 F.3d at 150.

With these principles in mind, we consider what it means for a claimant to "substantially prevail" in a forfeiture proceeding under CAFRA. This court first considered that question in *United States v. Khan*, 497 F.3d 204 (2d Cir. 2007). In *dictum,* we there suggested that "our understanding" of "substantially prevails" should be informed by the Supreme Court's construction of the phrase "prevailing party" in *Buckhannon v. W. Va.*, 532 U.S. at 604 (construing phrase "prevailing party" as used in fee-shifting provisions of Fair Housing Amendments Act and Americans with Disabilities Act). *United States v. Khan*, 497 F.3d at 209 n.7. We later cited approvingly to *Khan* in considering "case law applicable to similar fee-shifting provisions"—including provisions referencing "prevailing parties"—in construing CAFRA's "substantially prevails" requirement. *United States v. Davis*, 648 F.3d 84, 97–98 (2d Cir. 2011) (concluding that CAFRA claimant who secured summary judgment on forfeiture claims brought under one statute had not substantially prevailed because government ultimately secured forfeiture of seized assets under different statute at trial). Mindful of this precedent, we here conclude that insofar as both the phrases "prevailing party" and "substantially prevails" require a litigant to "prevail" to some degree, *Buckhannon* usefully informs our construction of that word as used in federal fee-shifting statutes.[12]

---

[12] Numerous statutes limit fee awards to a "prevailing party." *See, e.g.*, 28 U.S.C. § 2412(b) (Equal Access to Justice Act); *id.* § 3905(a) (Presidential and Executive Office Accountability Act); 42 U.S.C. § 3613(c)(2) (Fair Housing Amendments Act); *id.* § 1988(b) (Civil Rights Attorney's Fees Award Act); *id.* § 12205 (Americans with Disabilities Act). Other statutes, in addition to CAFRA, limit fee awards to a litigant who "substantially prevails" in an action. *See, e.g.*, 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); *id.* § 552a(g)(2)(B) & (g)(3)(B) (Privacy Act); *id.* § 552b(i) (Government in the Sunshine Act);

In *Buckhannon v. W. Va.*, the Supreme Court stated that a party—there the plaintiff—"prevails" in a judicial proceeding when it has "been awarded some relief by the court." 532 U.S. at 603. The relief itself can be "nominal," *id.* at 604; what is essential, however, is that the relief be awarded "*by the court,*" *id.* at 603 (emphasis added). The latter conclusion is reinforced by the Court's specific rejection in *Buckhannon* of an urged "catalyst theory," which would have recognized a litigant to prevail in a judicial proceeding when it "achieve[d] the desired result because the lawsuit brought about a voluntary change in [an adversary's] conduct." *Id.* at 601–02, 605. On this point, the Court was clear: such a litigant is not properly recognized to have prevailed in the action because the parties had not been subjected to any "judicially sanctioned change in the[ir] legal relationship." *Id.* at 605. The adversary's voluntary actions may have benefited the litigant, but they "lack[ed] the . . . judicial *imprimatur*" necessary to find that the litigant "prevail[ed]" in the court proceeding itself. *Id.*[13]

---

15 U.S.C. § 4304(a)(1) (National Cooperative Research and Production Act). Some statutes in this latter group, including CAFRA, authorize fee awards to "claimants," who may not be denominated "parties" in the proceeding at issue. For example, in the civil forfeiture proceeding here at issue, the "parties" were the United States as plaintiff and sums of seized monies as defendants-*in-rem*. To address such circumstances, Congress may have used the phrase "substantially prevails" rather than "prevailing party" to make clear its intent to authorize awards for litigants (*i.e.*, claimants) who, though not "parties" to an action, nevertheless substantially prevail in the litigation as to their objectives much as prevailing parties do as to theirs. Thus, at least one of our sister circuits has concluded that "'substantially prevailing' is the functional equivalent of 'prevailing'" in the phrase "prevailing party." *See United States v. Thirty-Two Thousand Eight Hundred Twenty Dollars & Fifty-Six Cents ($32,820.56) in U.S. Currency*, 838 F.3d 930, 934–35 & n.3 (8th Cir. 2016) ("*United States v. $32,820.56*").

[13] In arguing for a broader construction of the phrase "substantially prevails" as used in CAFRA, Ross and *amicus* Institute for Justice point us to the Freedom of Information Act

The continued controlling effect of *Buckhannon*'s construction of "prevail" to require "judicially sanctioned" relief is confirmed by the Supreme Court's decision last term in *Lackey v. Stinnie*, 604 U.S. 192 (2025). In there construing "prevail" to require a litigant to have secured a change in the parties' legal relationship that was "judicially sanctioned and enduring," the Court quoted much of the above language from *Buckhannon* both as support for the first requirement, *see, e.g., id.* at 203 (concluding that, "[i]n *Buckhannon*, we established that the change [in relationship] must be 'judicially sanctioned'"), and to clarify how it pertained to the second, *see id.* (observing that "enduring nature of that change must itself be judicially sanctioned"). Thus, the Court ruled that a litigant who secured a preliminary injunction could not be deemed to have prevailed because such relief, while judicially sanctioned, was not enduring. *See id.* at 203–04. Nor does a litigant prevail when, as in *Lackey*, "external events convert the transient victory into a lasting one," as such relief lacks the requisite judicial

---

("FOIA"), which Congress amended in 2007 to authorize a fee award for a "complainant" who "has substantially prevailed" even by "a voluntary or unilateral change in position by the agency" from which information is sought. 5 U.S.C. § 552(a)(4)(E). Their reliance is misplaced. To the extent Congress there "abrogate[d]" *Buckhannon* in approving a catalyst theory of "prevails" for purposes of FOIA, *Warren v. Colvin*, 744 F.3d 841, 845 (2d Cir. 2014), the statute expressly states that the provision applies only "[f]or purposes of" § 552(a)(4)(E). Where Congress has thus shown that it knows how to authorize attorney fee awards in the absence of a favorable judicial ruling, based simply on a catalyst theory, and where it has expressly cabined that authority to FOIA proceedings, a court cannot itself extend that catalyst theory to other statutes with a "substantially prevails" requirement, particularly those waiving sovereign immunity, which must be construed strictly. *Cf. Ruckelshaus v. Sierra Club,* 463 U.S. at 685 & n.7 (declining to construe statute to authorize fee awards in absence of success on merits without clear showing result intended by Congress).

sanction. *Id.* at 203. In sum, it is only when a *court* resolves a claim that a litigant can be said to have prevailed in a judicial proceeding. *Id.* at 203–04.[14]

*CRST Van Expedited*, *Inc. v. EEOC*, 578 U.S. 419 (2016), relied on by Ross, does not support a construction of "prevail" in the CAFRA phrase "substantially prevails" at odds with the judicially-sanctioned-relief requirement identified in *Buckhannon* and reiterated in *Lackey*. In *CRST*, the Supreme Court clarified that *Buckhannon* should not be construed to require a litigant to secure a court ruling "on the merits" to prevail in a proceeding. *Id.* at 427, 431–32 (holding defendant "prevailed" when district court dismissed with prejudice certain discrimination claims brought by EEOC not on merits but because EEOC had "abandoned its statutory duties [first] to investigate and conciliate" (internal quotation marks omitted)). Insofar as *Buckhannon* stated that a litigant prevails only by securing judicial relief that effects a "material alteration of the legal relationship of the parties," 532 U.S. at 604 (internal quotation marks omitted), *CRST* further clarified that when a litigant is in a defensive position, that requirement can be satisfied by having the court "rebuff[]" an alteration in legal relationships sought by its adversary, 578 U.S. at 431. That is consistent with *Buckhannon* because the rebuff must result from "the court's decision." *Id.*

---

[14] The two dissenting justices in *Lackey* thought that a litigant securing a preliminary injunction could be deemed to have prevailed, particularly in the circumstances presented by that case. *See id.* at 211–13 (Jackson, J., dissenting). But nowhere did they suggest that a litigant could prevail in the absence of judicially sanctioned relief of some kind. Quite the contrary, it was only after acknowledging *Buckhannon*'s rejection of a "catalyst theory" for identifying a prevailing litigant that the *Lackey* dissenters submitted that a "preliminary injunction that mandates a *judicially sanctioned* legal change in the parties' relationship and is never reversed by a final ruling on the merits satisfies . . . *Buckhannon*." *Id.* at 219 (Jackson, J., dissenting) (emphasis added).

This reasoning applies equally to forfeiture claimants as to defendants. Such a claimant's objective is to have the court deny the government's request for a forfeiture judgment and order restoration of seized property to the claimant.[15] Thus, the claimant prevails when a "court[] decision" conclusively rebuffs the government's forfeiture request and orders restoration of the *res* to the claimant. *Id.* Nothing in *CRST* or any other case cited by Ross or his *amici* supports a conclusion that such a claimant can be found to have "prevailed"—substantially or otherwise—in the absence of such judicially sanctioned relief.[16]

In this case, Ross obtained none of the judicially sanctioned relief that he sought from the district court. Rather, over Ross's objection, the district court entered a judgment that granted the government all the relief it then sought, *i.e.*, (1) an order forfeiting to the United States the $3.69 million of defendants-*in-rem* for which no claim had been filed, (2) the dismissal *without prejudice* of the forfeiture action as to the $1.21 million of defendants-*in-rem* claimed by Ross and Phoenix, and (3) a certificate of reasonable cause as to the initial seizure of that $1.21 million. *See* March 6, 2023 Judgment at 1. At the same time, the district court expressly denied Ross all the relief he requested, *i.e.*, (1) a judgment denying forfeiture of the claimed $1.21 million; (2) an order directing the return of those monies to Ross; and, alternatively, (3) dismissal of the forfeiture action against all

---

[15] The objective is conjunctive because a claimant does not necessarily "prevail" whenever a court denies the government's request for forfeiture, particularly where, as in this case, there are competing claimants to the seized monies.

[16] In *Lackey v. Stinnie*, the Supreme Court cited *CRST* in observing that because "[p]laintiffs and defendants come to court with different objectives," the latter "need not obtain a favorable judgment on the merits to prevail," 604 U.S. at 204 n.* (leaving open question whether "defendant must obtain a preclusive judgment . . . to prevail"). But, as in *CRST*, the Court clearly stated that a litigant "prevails" only when he obtains relief that is "judicially sanctioned." *Id.* at 203–04; *accord id.* at 219 (Jackson, *J.,* dissenting).

28

defendants-*in-rem* and, specifically, dismissal with prejudice as to the $1.21 million claimed by him.

Ross nevertheless submits that he substantially prevailed in the forfeiture proceeding because the district court's dismissal—even without prejudice—of the forfeiture proceeding against the contested $1.21 million defendants-*in-rem* led the government to return those monies to him. He is mistaken.

A court's dismissal of an action without prejudice does not award judicial relief to any party but, rather, "renders the proceedings a nullity," 8 *Moore's Federal Practice* § 41.40[9][b] (3d ed. 2025), and "leaves the situation as if the action never had been filed," 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2367 (4th ed.) (updated May 2025). As other courts of appeals have observed, by ordering such a dismissal, the court does "not materially alter the legal relationship" between the defendants-*in-rem* and any claimant in favor of the latter, so as to admit a conclusion that the claimant prevailed. *United States v. $32,820.56*, 838 F.3d at 936–37 [8th Cir.]. Rather, when a district court dismisses a civil forfeiture action without prejudice, the government's "claim of superior title" over any claimant's interest in defendants-*in-rem* "remains unadjudicated." *United States v. $70,670 in U.S. Currency*, 929 F.3d 1293, 1304 (11th Cir. 2019). In such circumstances, neither the government nor the claimant prevails with respect to the disputed *res*. *See Buckhannon v. W. Va.*, 532 U.S. at 620 (Scalia, J., concurring) ("One does not prevail in a suit that is never determined."). The conclusion applies with particular force where, as here, there were competing claims for the $1.21 million of defendants-*in-rem* from Ross and Phoenix.[17] Further, a dismissal without prejudice leaves the government free to refile a forfeiture action against the same defendants-*in-rem*

---

[17] Phoenix did not withdraw its claim to $1.21 million, but it did join in the government's motion for a default judgment as to the unclaimed $3.69 million.

29

consistent with CAFRA and the applicable statute of limitations. *See United States v. $70,670 in U.S. Currency*, 929 F.3d at 1303. The government's ability to succeed in such a later action may well be reduced by its inability to retain seized assets in the absence of a forfeiture order and, thus, prevent their dissipation. Nevertheless, the fact that a claimant thus "remains subject to the risk of re-filing" for forfeiture of a seized *res* in which he claims an interest compels the conclusion that he did not "substantially prevail" in the dismissed proceeding. *Oscar v. Alaska Dep't of Educ. & Early Dev.*, 541 F.3d 978, 981 (9th Cir. 2008) (holding that dismissal without prejudice did not confer prevailing party status on defendant in Individuals with Disabilities Education Act action); *see also Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 103 (2d Cir. 2006) (holding that party who obtains *forum non conveniens* dismissal of action is not "prevailing party" entitled to attorney fees because he is not "immunize[d]" from "risk of further litigation on the merits" of claim).

In urging otherwise, Ross argues that the district court's March 6, 2023 dismissal without prejudice was functionally a dismissal *with* prejudice in that the one-year limitations period within which the government had to refile its forfeiture claim under 18 U.S.C. § 984—which began to run in October 2021—had already expired by March 2023. The argument fails because the government also sought forfeiture under 18 U.S.C. § 981, a statute whose five-year statute of limitations continues to run until October 2026. *See* 18 U.S.C. § 981(d); 19 U.S.C. § 1621. Because Ross remains at least potentially at risk of refiling and forfeiture under that statute, he cannot be said to have achieved a judicially sanctioned, enduring, material alteration in his relationship with either the government or the $1.21 million of defendants-*in-rem*, without which he cannot be said to have substantially prevailed in the dismissed proceedings. *See, e.g., United States v. Davis*, 648 F.3d at 97–98 (holding claimant did not "substantially prevail" under CAFRA by defeating forfeiture claims under one statute when government thereafter secured forfeiture under another statute at trial).

30

Nor are we persuaded otherwise by Ross's argument that, in moving voluntarily to dismiss forfeiture proceedings against $1.21 million of defendants-*in-rem*, the government conceded that it could not carry its burden of proof as to the claimed $1.21 million. *See* Memorandum Decision and Order, *United States v. $4,183,402.74 in U.S. Currency*, No. 22-CV-138 (GLS), 2023 WL 2329480, at *4 (N.D.N.Y. Mar. 2, 2023) ("March 2, 2023 Memorandum Decision") (observing that "by voluntarily withdrawing the action as to the [$1.21 million] the government is conceding that the Contested Funds are not forfeitable"). Even assuming such a concession as of March 2024, a dismissal without prejudice allowed the government to refile a forfeiture action anytime up to October 2026 if new evidence emerged allowing it to carry its burden. *Cf.* 18 U.S.C. § 983(c)(2) (stating "Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture"). The record on appeal does not compel a finding that no such evidence could be developed or that it was somehow unfair to Ross to allow the government to try to do so. *See infra* at 38 (discussing aspects of the case warranting further investigation). In any event, we agree with two of our sister circuits that, in deciding whether dismissal without prejudice leaves a claimant at risk of renewed forfeiture proceedings so as to preclude a finding that he substantially prevailed, the dispositive question is not how likely the government is to state facts supporting a renewed action, but whether there is "a legal barrier" to such an action. *United States v. $32,820.56*, 838 F.3d at 937 [8th Cir.]; *United States v. $70,670.00 in U.S. Currency*, 929 F.3d at 1303 [11th Cir.] (noting "practical difficulty" for government in refiling forfeiture action "is irrelevant" to determine if claimants "prevail[ed]" under CAFRA). Because there is no legal barrier to the government refiling a forfeiture action against the $1.21 million of defendants-*in-rem* in the forfeiture action dismissed without prejudice, we conclude that Ross

cannot show that he prevailed in that action so as to warrant an award of attorney fees and costs.

Having rejected Ross's argument that he prevailed in this proceeding because the district court's dismissal without prejudice was tantamount to a dismissal with prejudice, we also reject his argument that he prevailed because dismissal led the government "permanent[ly]" to return the claimed $1.21 million to him. Appellant Br. 30. As noted *supra* at 25, the Supreme Court has clearly rejected a catalyst theory for identifying when a litigant prevails in a judicial proceeding, *see Buckhannon v. W. Va.*, 532 U.S. at 601–05; *accord Lackey v. Stinnie*, 604 U.S. at 203–04. In any event, because the returned monies remain at some risk of forfeiture through October 2026, Ross cannot now be said to have prevailed in securing their enduring return, much less to have done so pursuant to judicial sanction. *See Lackey v. Stinnie*, 604 U.S. at 203–05; *Buckhannon v. W. Va.*, 532 U.S. at 605.

### C.    Dismissal Without Prejudice

Ross's alternative argument for vacatur—*i.e.*, that the district court abused its discretion by failing to enter dismissal with prejudice—is also meritless.

Where parties do not stipulate to dismissal after an answer is served, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). While Rule 41(a)(2) presumes that voluntary dismissal is granted without prejudice, *see id.*, it is "not a matter of right," *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990).

We have developed "[t]wo lines of authority" for determining when "dismissal without prejudice might be improper." *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006). The first asks whether "the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Id.* (quoting

32

*Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 217 (1947)). The second considers five non-exhaustive factors relevant to determining whether a case has reached a point that dismissal would prejudice the defendant:

> [1] the plaintiff's diligence in bringing the motion; [2] any "undue vexatiousness" on plaintiff's part; [3] the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; [4] the duplicative expense of relitigation; and [5] the adequacy of plaintiff's explanation for the need to dismiss.

*Zagano v. Fordham Univ.*, 900 F.2d at 14. Under either line, we review only for abuse of discretion, which is not evident here. *See Camilli v. Grimes*, 436 F.3d at 123.

### 1.      No Plain Legal Prejudice

Ross submits that dismissal without prejudice of the forfeiture action against $1.21 million of defendants-*in-rem* caused him plain legal prejudice insofar as it prevented him from being found to have substantially prevailed in the forfeiture action and, thereby, to obtain an award of attorney fees and costs. He is mistaken. To demonstrate plain legal prejudice from a dismissal without prejudice, a litigant must show more than a lost opportunity to obtain relief collateral to that at issue in the dismissed action. This court recognized as much in *Camilli v. Grimes,* wherein we rejected a claim that a litigant sustained plain legal prejudice because, as a result of a dismissal without prejudice, he lost the opportunity to sue his adversary for malicious prosecution. *See* 436 F.3d at 124. Of course, a malicious prosecution claim would have to be pursued in an action distinct from that dismissed, whereas a CAFRA claim for attorney fees and costs would be brought in the forfeiture action whose dismissal without prejudice was being challenged. Nevertheless, the same reasoning pertains in both circumstances. As we explained in *Camilli*, "if loss of the opportunity to initiate a malicious prosecution suit could defeat a dismissal of a plaintiff's suit without

33

prejudice, every defendant could insist on a dismissal with prejudice by asserting an intention to sue for malicious prosecution." *Id.* So here, if loss of the opportunity to claim attorney fees and costs in a CAFRA action could defeat dismissal of such an action without prejudice, every claimant would insist on a dismissal with prejudice in order to pursue fees and costs. In both circumstances, more is required to demonstrate plain legal prejudice compelling a dismissal with prejudice.[18]

A court properly recognizes "plain legal prejudice" to result from a dismissal without prejudice when a "cause has proceeded so far that the defendant"—or, in a forfeiture proceeding, a claimant—"is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action." *Id.* at 124 (citation omitted). The forfeiture proceeding here had not reached such a point. The government moved voluntarily to dismiss the forfeiture proceeding as against $1.21 million of

---

[18] In urging otherwise, Ross cites *United States v. Ito,* 472 Fed. App'x. 841, 842 (9th Cir. 2012) (vacating without-prejudice dismissal on conclusion that claimants "suffered plain legal prejudice in losing their ability to move for attorney's fees" under CAFRA). That unpublished, three-paragraph decision is not precedential, even in the Ninth Circuit, *see* 9th Cir. Rule 36-3(a), and thus merits little discussion here. We do note, however, that the district court decision challenged in *Ito* was inherently inconsistent in that it dismissed the complaint without prejudice while at the same time allowing "[c]laimants [to] mov[e] for costs and attorneys' fees under 28 U.S.C. § 2465(b)." *United States v. One 2008 Toyota Rav 4 Sports Util. Vehicle*, No. 09 Civ. 5672, 2010 WL 11531203, at *3 (C.D. Cal. July 16, 2010), *vacated and remanded sub nom. United States v. Ito*, 472 F. App'x 841. As the Ninth Circuit observed, "dismissal without prejudice precludes prevailing party status," *United States v. Ito,* 472 Fed. App'x. at 842, which was at odds with the decision to allow claimants to move for fees and costs. Here, the district court's dismissal without prejudice is entirely consistent with its denial of statutory fees and costs for reasons discussed *supra* in Point II.B.

defendants-*in-rem* within nine months of filing the complaint and before the parties had exchanged discovery or engaged in any dispositive motion practice. Moreover, Ross was not able to "demand on the pleadings" affirmative relief or to show that he would be "prejudiced" by the possibility of a refiled forfeiture proceeding. *Id.*

On the last point, Ross argues he could have demanded a judgment in his favor as to the claimed $1.21 million because the government acknowledged that these monies were "apparently unrelated" to the Phoenix fraud. J. App'x 378–79. In fact, Ross did demand such a judgment, which the district court denied. *See supra* at 16–17. In any event, Ross overstates the government's position. The quoted statement comes from the affidavit filed in support of a warrant to seize all monies in the Regions Bank Account. Therein, a Secret Service agent reported what the government knew as of November 16, 2021, with respect to more than $38.78 million in transfers into and out of the Regions Bank Account in October 2021. In that context, the government's characterization of two transfers totaling $1.21 million as "apparently unrelated" to the Phoenix fraud must be understood to have been both qualified and preliminary.

Moreover, at the pleadings stage, the government's burden was simply to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its [preponderance-of-the-evidence] burden of proof at [a forfeiture] trial." Supp. Rule G(2)(f). The government easily carried that burden by directly linking the vast majority of millions of dollars moving into and out of the Regions Bank Account in October 2021 to the Phoenix fraud. As to the "apparently unrelated" $1.21 million transfers, the government did not need to trace those monies directly to the Phoenix fraud given that it sought forfeiture pursuant not only to 18 U.S.C. § 981 (providing for forfeiture of proceeds of criminal activity), but also to *id.* § 984 (providing for forfeiture of fungible assets

35

without tracing).  In any event, a reasonable belief that even these monies might be laundered proceeds of the Phoenix fraud, now being returned to the Regions Bank Account to compensate Ross for serving as the fraud's "money mule," finds support in the following facts: (1) before October 7, 2021, the Regions Bank Account contained only $3,877.33; (2) the transfer of the claimed $1.21 million into that account occurred within days of other multi-million dollar transfers, $29.6 million of which were clearly linked to the Phoenix fraud; (3) Ross admitted knowing of these transfers and directing some of them; and (4) a Secret Service agent reported that  "money mules wittingly allow their [bank] accounts to be used to move or funnel ill-gotten gains because they are financially compensated for doing so, even if they lack awareness of or responsibility for the underlying fraud schemes."  J. App'x 377–79.

While Ross maintains that $1.20 million of the claimed $1.21 million represented proceeds from the documented sale of his home, the government was not required to prove otherwise in order to pursue forfeiture.  *Cf. Ganek v. Leibowitz*, 874 F.3d 73, 87 (2d Cir. 2017) (holding, in criminal context, that innocent explanation which may be consistent with alleged facts does not negate probable cause).  Nor was it—or the district court—compelled at this point to conclude that the transaction was not itself part of a scheme to launder fraudulent proceeds.  Indeed, because rules of professional conduct prohibited Ross from commingling his personal funds with those of his clients, the government and the district court would have had reason to be suspicious of Ross's innocent explanation for these monies.  *See* Florida Bar R. 5-1.1(a)(1) (requiring lawyer to "hold in trust, separate

from the lawyer's own property, funds and property of clients or third persons that are in a lawyer's possession in connection with a representation").[19]

In sum, Ross cannot show that on the record before the district court, he was entitled to a forfeiture judgment in his favor, or that he would be unduly prejudiced by a refiled forfeiture proceeding. Thus, he has sustained no plain legal prejudice so as to compel a conclusion that the district court abused its discretion in dismissing the case without prejudice.

## 2. *Zagano* Factors Do Not Compel Dismissal with Prejudice

No different conclusion is compelled by the *Zagano* factors, as to which the district court found that (1) the government moved voluntarily to dismiss the forfeiture proceeding within nine months of its filing; (2) nothing in the record indicated undue vexatiousness; (3) the parties had not yet exchanged discovery; (4) there was "little, if any, risk of the duplicative expense of relitigation"; and (5) the government provided an adequate explanation for its decision to seek dismissal. March 2, 2023 Memorandum Decision, 2023 WL 2329480, at *5 (internal quotation marks omitted). Insofar as Ross challenges these findings as to the first, second, and fifth *Zagano* factors, we identify no abuse of discretion.

As to the first and fifth factors, the government explained that it had reassessed the strength of its forfeiture claim as to $1.21 million of defendants-*in-rem* in light of "information and documentation obtained" over the course of its approximately twelve-month-long investigation. J. App'x 245. Such a reassessment is entirely appropriate, as is a request for dismissal without prejudice

---

[19] In the district court, Ross submitted that sometime after depositing the home sale proceeds in his trust account, he contacted the Florida Bar Ethics Hotline, where an unidentified person approved his actions because Ross was representing himself "as the client" in the home sale.

that reserves the option for a refiled forfeiture proceeding if further evidence warrants. *See generally United States v. $32,820.56*, 838 F.3d at 937 (holding "Department of Justice [is] free to change [its] discretionary policies" to seek dismissal without prejudice "and to pursue another civil forfeiture action in the future"). Further, a twelve-month investigation does not suggest undue delay given (1) the unknown whereabouts of more than $20 million of the $29.6 million fraudulently transferred into the Regions Bank Account in October 2021; (2) the large number of million-dollar transfers in and out of that account in October 2021; (3) the need for international cooperation to investigate (and possibly recover) certain transfers; and (4) the possibility that Ross had acted as a "money mule" in allowing, and even facilitating, some of these transfers. *See Catanzano v. Wing*, 277 F.3d 99, 110 (2d Cir. 2001) (holding that *Zagano* factors did not preclude dismissal without prejudice of case pending for twelve years where plaintiffs "were not dilatory in bringing the motion" for such dismissal).

On the second factor, Ross faults the government for (1) initiating this forfeiture action because it seized the entire $4.18 million in the Regions Bank Account despite articulating reasonable cause to seize only $2.97 million; and (2) seeking dismissal without prejudice in order to avoid an inevitable fee award under CAFRA. On this appeal, we need not precisely delineate when conduct is sufficiently vexatious to compel dismissal with prejudice because we identify no such misconduct here. Rather, the record indicates that the government responsibly initiated this forfeiture proceeding under 18 U.S.C. §§ 981 and 984 to prevent the further dissipation of some $4.9 million remaining in the Regions Bank Account (or recalled by the bank) into which $29.6 million had recently been fraudulently transferred, and out of which the majority had already been transferred. Insofar as questions arose as to whether $1.21 million of this $4.9 million were proceeds of the fraud, the government's motion voluntarily to dismiss the action without prejudice can hardly be deemed so vexatious to Ross

as to compel dismissal with prejudice. As noted *supra* at 38, with more than $20 million in criminal proceeds still unaccounted for, and with questions still unanswered about Ross's role in the fraud, it was entirely reasonable for the government to request, and for the district court to grant, dismissal without prejudice in the event further evidence was developed supporting the forfeiture of the $1.21 million.

Insofar as Ross challenges dismissal without prejudice on the ground that it allowed the government to evade paying him CAFRA fees and costs by avoiding an adverse judgment, he has failed to demonstrate any "undue vexatiousness" on the part of the United States in this case. *Zagano*, 900 F.2d at 14. In support, he points only to the fact that the government did not move voluntarily to dismiss until after Ross moved to lift the stay to permit him to move for summary judgment. Ross does not contend that the government's actions were driven by bad faith.[20] The Supreme Court has now twice concluded, as a general matter, that the risks of such gamesmanship by the government remain "entirely speculative." *Buckhannon v. W. Va.*, 532 U.S. at 608–09; *accord Lackey v. Stinnie*, 604 U.S. at 204–05. We agree that the same is true here, mindful further that the ultimate decision whether to dismiss a forfeiture proceeding with or without prejudice rests with the district court, which is well situated to consider the totality of the circumstances in choosing between the two. *See United States v. $32,820.56*, 838 F.3d at 936 (recognizing courts' authority "to guard against abuse and to dismiss *with* prejudice in appropriate cases" (emphasis in original)).

---

[20] *See* Oral Arg. Tr. 22:5-11 (submitting "I don't want to accuse anybody of bad faith in this case," "I don't think we want any bad-faith rule," and despite "a rush to bring [this] case. . . I don't think that makes it a bad-faith prosecution.").

As to the remaining factors, the district court acted well within its discretion in concluding that dismissal without prejudice was warranted given the early stage of the litigation and low risk of unnecessary duplication of effort.

In sum, Ross's dismissal challenge fails because he cannot show either that plain legal prejudice or that the *Zagano* factors compelled dismissal with prejudice.

## D. Certificate of Reasonable Cause

We review *de novo* Ross's challenge to the district court's grant of a certificate of reasonable cause as to the seizure of $1.21 million of defendants-*in-rem* insofar as any error rests on a disputed question of law. *See United States v. Gagnon*, 373 F.3d 230, 235 (2d Cir. 2004). The point merits little discussion because the government concedes error.

As relevant here, CAFRA authorizes the issuance of a certificate of reasonable cause,

> (a) *Upon the entry of a judgment for the claimant* in any proceeding to condemn or forfeit property seized or arrested under any provision of Federal law . . .
> . . .
> (2) if it appears that there was reasonable cause for the seizure or arrest, the court shall cause a proper certificate thereof to be entered . . . .

28 U.S.C. § 2465(a)(2) (emphasis added).

As the Supreme Court has recognized, the rationale for such a certificate is to shield law enforcement officers against damages suits for seizures supported by reasonable cause. *See generally Heien v North Carolina*, 574 U.S. 54, 62 (2014) (discussing certificates of reasonable cause in context of seizures by customs authorities). As the above-highlighted language makes plain, however, a

certificate of reasonable cause is properly issued under CAFRA only "[u]pon the entry of a judgment for the claimant." 28 U.S.C. § 2465(a)(2); *see United States v. 4,432 Mastercases of Cigarettes, More or Less,* 448 F.3d 1168, 1183 (9th Cir. 2006) (describing § 2465 as requiring "judicial determination that the government wrongly seized property for forfeiture"). No such judgment having been entered in Ross's favor, the government now concedes error in the district court's grant of the challenged certificate. Accordingly, we vacate that certificate without need to consider Ross's challenge to the district court's reasonable cause determination.

## CONCLUSION

To summarize, we conclude as follows:

1. Ross cannot contest that part of the judgment ordering forfeiture of $3.69 million of the defendants-*in-rem* because he failed to demonstrate Article III standing and, in any event, failed to file a timely claim to this property as required by Supp. Rule. G(5).

2. Ross sustained no denial of due process from the district court's reasonable grant of a stay of discovery in this civil forfeiture proceeding while a parallel criminal investigation was pursued. *See* 18 U.S.C. § 981(g)(1).

3. The district court having dismissed this civil forfeiture proceeding without prejudice, Ross cannot be said to have "substantially prevail[ed]" in the proceeding so as to be entitled to an award of attorney fees and costs against the United States; and the government's subsequent voluntary return of the $1.21 million claimed by Ross warrants no different conclusion. 28 U.S.C. § 2465(b)(1)(A).

4. The district court did not abuse its discretion in granting dismissal without prejudice.

41

5. No judgment having been entered for Ross as to the $1.21 million claimed by him, the district court erred in granting the government a certificate of reasonable cause for the seizure of those monies. *See* 28 U.S.C. § 2465(a)(2).

Accordingly, we **VACATE** so much of the district court's March 6, 2024 and March 22, 2024 judgments as granted a certificate of reasonable cause and then denied reconsideration of that grant. In all other respects, we **AFFIRM** the challenged judgments.